BONITA L. WELCH, Plaintiff-Appellant, v. THE ILLINOIS SUPREME COURT *et al.,* Defendants-Appellees.

Third District    No. 3—00—0143

Opinion filed June 4, 2001.

Bonita L. Welch, of Peru, appellant *pro se.*

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and A. Benjamin Goldgar, Assistant Attorney General, of counsel), for appellees.

JUSTICE BYRNE delivered the opinion of the court:

Plaintiff, Bonita L. Welch, appeals the judgment of the circuit court of La Salle County granting the motion of defendants, the Illinois Supreme Court and Justice James D. Heiple, to dismiss Welch's two-count complaint. We affirm.

On May 5, 1998, Welch filed the present action against defendants. The following uncontroverted facts are taken from the complaint. Count I, directed solely against defendant Illinois Supreme Court, alleged that on or about February 10, 1994, the Illinois Supreme Court, through its agents, the justices of the Appellate Court, Third District (Third District), offered Welch a position with the Third District to work as a research attorney at a salary of $39,464. Welch alleged that in consideration she agreed to transfer from her position as judicial law clerk for Justice Tobias Barry to fill the position of research attorney for the Third District, effective February 16, 1994. Welch alleged that she began work on February 16, 1994, pursuant to the oral agreement, and the supreme court subsequently breached the agreement by reducing her salary to $32,571. Welch sought damages in excess of $100,000 for the alleged breach.

Count II, directed solely against defendant Justice Heiple, alleged that Justice Heiple tortiously interfered with Welch's employment

agreement by directing that her salary be reduced. Welch alleged that the justices of the Illinois Appellate Court were authorized by administrative rule to pay new-hire research attorneys up to $39,464 per year without requesting the approval of the supreme court. Welch further alleged that Justice Heiple learned of Welch's agreement for a transfer from Robert Davison, then director of the Administrative Office of Illinois Courts, an agent of the supreme court. Welch alleged that Justice Heiple intentionally interfered with the oral agreement for employment by directing Davison to order the payroll department to reduce her salary to $32,571, the minimum starting salary for the position of research attorneys. Welch further alleged that, at the time Justice Heiple ordered the reduction of her salary, he knew that Welch had 12 years' experience as Justice Barry's judicial law clerk. Welch alleged that Justice Heiple's action was not performed in furtherance of his position as justice of the supreme court, in furtherance of any policy, or in furtherance of his administrative authority over the Third District. Instead, she claimed that it was an unauthorized, arbitrary, and a capricious act taken with malice and in reckless disregard of Welch's rights, in derogation of administrative rules and the State's policy of not impairing State contracts, and in furtherance of his private or political bias against Welch as an older employee, a female, and as a former employee of his political rival, Justice Barry. Welch sought damages in count II in excess of $300,000.

Defendants filed a motion to dismiss the complaint pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619(a)(1) (West 1998)), arguing that sovereign immunity barred both claims. Defendants supplemented the motion to dismiss count II on the ground that the Illinois Human Rights Act (Human Rights Act) (775 ILCS 5/8—111(C) (West 1998)) preempted the claim to the extent it purported to allege sex or age discrimination. Defendants further argued that Welch's alleged political association with Justice Barry gave her no cognizable claim against Justice Heiple for tortious interference with contract.

The trial court agreed with defendants. The court dismissed count I as barred by sovereign immunity, noting that under section 8 of the Court of Claims Act (705 ILCS 505/8 (West 1998)), a state entity cannot be sued in a circuit court, particularly when the allegation involves monetary claims for a breach of contract with the State. The court also dismissed count II on the basis of sovereign immunity. The court found that the crucial issue was whether Justice Heiple's actions were "outside the scope of his authority." The court found that, when a request for more than the average authorized salary was made, Justice Heiple had the authority to become involved in the matter and that to

hold otherwise would be to control the State's actions in personnel and employment matters. The court further dismissed count II as preempted by the Human Rights Act to the extent that it alleged age and sex discrimination claims. Concluding that the court lacked jurisdiction over Welch's action, the court dismissed the complaint with prejudice.

Welch filed a motion to reconsider and sought leave to file a first amended complaint. Welch sought declaratory relief under count I. The remainder of the pleadings essentially contained the same allegations but sought more damages. The trial court denied the motion for reconsideration and held that, although Welch purportedly sought "declaratory relief" in count I, the claim was essentially one for monetary damages. Because sovereign immunity would still bar both counts, the court refused to allow Welch leave to amend. Welch timely appeals from the order dismissing her complaint and from the denial of her motion to amend.

On appeal, Welch does not contest the trial court's dismissal of count I as barred by sovereign immunity. Rather, her first argument centers on the section 2—619 dismissal of count II (tortious interference by Justice Heiple) on the basis of sovereign immunity.

■ The granting of a section 2—619 motion to dismiss is proper only if it appears that no set of facts can be proved that would entitle the plaintiff to recover. *Turner v. Fletcher*, 302 Ill. App. 3d 1051, 1055 (1999). Where defects do not appear on the face of the pleadings, affidavits can be filed stating affirmative matters that justify dismissal. In addressing a section 2—619 motion, a court takes all well-pleaded facts in the complaint as true, and only the complaint's legal sufficiency is contested. *Petty v. Crowell*, 306 Ill. App. 3d 774, 776 (1999). We review the granting of a section 2—619 motion *de novo*. *Petty*, 306 Ill. App. 3d at 776.

■ Sovereign immunity in Illinois exists pursuant to a statute and mandates that the State or a department of the State cannot be sued in its own court or any other court without its consent. The legislature enacted the State Lawsuit Immunity Act (745 ILCS 5/1 *et seq.* (West 1998)), which provides that the State shall not be made a defendant or party in any court except as provided by section 8 of the Court of Claims Act (Act) (705 ILCS 505/8 (West 1998)). The Act established the Court of Claims as the "exclusive" forum for resolving lawsuits against the State. 705 ILCS 505/8 (West 1998). The Act gives exclusive jurisdiction to the Court of Claims in lawsuits against the State of Illinois, including contract actions, tort actions, and actions founded upon Illinois laws.

■ The doctrine of sovereign immunity has not been confined to

actions that name the State as a defendant. Sovereign immunity applies in an action naming a State employee as defendant where the impact on the State makes it, for all practical purposes, a suit against the State. *Healy v. Vaupel*, 133 Ill. 2d 295, 308 (1990). The determination of whether an action is an action against the State or is against only the individual depends on the issues involved and the relief sought, rather than the formal designation of the parties. *Healy*, 133 Ill. 2d at 308.

■ Courts generally look to three criteria in determining whether an action is really against the State: (1) whether the official allegedly acted beyond the scope of his authority; (2) whether the duty the official allegedly breached is owed solely by virtue of State employment; and (3) whether the action the official allegedly took involved matters within his normal and official functions. *Janes v. Albergo*, 254 Ill. App. 3d 951, 958 (1993). Even when these criteria are not met, a court must consider the relief sought. *Janes*, 254 Ill. App. 3d at 958. Sovereign immunity will apply whenever a judgment for the plaintiff could operate either to control the actions of the State or subject it to liability. *Griffin v. Fluellen*, 283 Ill. App. 3d 1078, 1084-85 (1996). The issue of when a State employee's on-the-job negligence is immunized turns on an analysis of the source of the duty the employee is charged with breaching in committing the allegedly negligent act. *Currie v. Lao*, 148 Ill. 2d 151, 159 (1992).

> "Where the charged act of negligence arose out of the State employee's breach of a duty that is imposed on him *solely* by virtue of his State employment, sovereign immunity will bar maintenance of the action in circuit court. [Citations.] Conversely, where the employee is charged with breaching a duty imposed on him *independently* of his State employment, sovereign immunity will not attach and a negligence claim may be maintained against him in circuit court." (Emphasis in original.) *Currie*, 148 Ill. 2d at 159.

Welch raises a number of contentions under her first argument. She contends that the trial court violated section 2—619(c) (735 ILCS 5/2—619(c) (West 1998)) by considering affidavits and other exhibits in ruling that count II was barred by sovereign immunity. Welch argues that the trial court's decision was founded upon improper factual determinations that (1) "a process was proceeding in relation to the hire" when Justice Heiple reduced her salary; and (2) Justice Barry's letter "justifiably trigger[ed] Justice Heiple's subsequent actions." Welch argues that based on this finding the court wrongly inferred that she had no binding contract when the complaint alleged that she did. Welch asserts that this improper inference allowed the court to conclude that Justice Heiple was acting "within the scope of his

authority," and so the court's sovereign immunity decision, which she claims rested on that conclusion, was also wrong. Welch further argues that rule 5(D)(1) of the Illinois Supreme Court Job Classification and Compensation Rules (rule 5(D)(1)) does not give defendants the authority to interfere with salary decisions up to the midpoint of the scale and, therefore, Justice Heiple exceeded the scope of his authority by violating the rule.

Defendants argue that rule 5(D)(1) does not restrict the authority of the supreme court and its members. Defendants argue that, once Justice Barry sought to obtain more than the midpoint salary for Welch, Justice Heiple had the authority to reduce Welch's salary. Defendants further argue that Justice Heiple's alleged violation of the rule is inconsequential because Welch's claim is barred by sovereign immunity as count II is, in effect, a tort action against the State that can be brought only in the Court of Claims.

Rule 5(D)(1) provides:

> "Prospective employees will normally be offered the minimum point of the salary grade. Administrative Authorities may offer the prospective employee a rate higher than the minimum point but within the Normal Starting Range providing the offer is close to the compensation paid to current employees with similar experience and training. Administrative Authorities may under unusual circumstances hire above midpoint but below maximum point only with the prior approval of the Supreme Court."

■ Welch confuses the jurisdictional question sovereign immunity presents with the merits of her claim. Regardless of whether Justice Heiple had violated rule 5(D)(1), it does not necessarily mean that he acted beyond the "scope of his authority" and does not, by itself, preclude the application of sovereign immunity. A State employee's violation of policy, regulation, or even statute does not necessarily avert the application of sovereign immunity. *Cf. Westshire Retirement & Healthcare Center v. Department of Public Aid*, 276 Ill. App. 3d 514, 520 (1995) (statutory violation); *Campbell v. White*, 207 Ill. App. 3d 541, 551 (1991) ("[e]ven assuming plaintiff correctly alleges defendant's acts violate the statute and regulations pertaining to the use of oscillating lights and sirens, defendant can act negligently or wilfully and wantonly without exceeding the scope of his authority").

■ Moreover, Welch assumes that the application of sovereign immunity depends on whether she had a binding employment contract and whether Justice Heiple was authorized to reduce her salary as part of her contractual agreement. The relevant question for sovereign immunity purposes, however, is not whether Justice Heiple had the authority to interfere with Welch's contract. The correct inquiry is

whether the charged acts of Justice Heiple arose out of his breach of a duty that is imposed on him *solely* by virtue of his State employment or whether he is charged with breaching a duty that arose *independently* of his State employment. See *Currie*, 148 Ill. 2d at 159. We believe that Justice Heiple's actions arose out of his alleged breach of a duty imposed on him by virtue of his State employment.

The opinion of *Wozniak v. Conry*, 288 Ill. App. 3d 129 (1997), is instructive. Wozniak, an associate professor at the University of Illinois (the University), sued his department head for tortious interference with Wozniak's employment contract with the University after remarks the defendant made about Wozniak's performance caused him to lose his job. Wozniak contended on appeal that his suit was not against the State because the statements made by the defendant did not arise out of a duty imposed solely by virtue of the defendant's employment; rather, the statements arose out of a duty imposed on the general public not to interfere with others' contractual relationships. The court stated:

> "Almost every aspect of every employment relationship with the state manifests itself through the immediate working relationships between co-workers, supervisors, and fellow state agents. Therefore, limiting the actions of state employees acts to control the actions of the state." *Wozniak*, 288 Ill. App. 3d at 134.

The court found that if it allowed Wozniak's suit against the defendant in his individual capacity it clearly would limit the defendant's ability to engage in lawful activity on behalf of the University, *i.e.*, to communicate, allocate tasks, and make personnel and other employment decisions. The court found that a judgment for Wozniak would directly influence the defendant's ability as a State employee to handle departmental personnel issues. Therefore, the court concluded that the suit threatened to control the actions of the State and should have been brought in the Court of Claims. *Wozniak*, 288 Ill. App. 3d at 134.

As in *Wozniak*, Justice Heiple's conduct affects the core of the State's ability to control its own affairs. It is undisputed that, as the supreme court justice elected from the Third District, Justice Heiple is considered to have supervisory authority over personnel matters there. Welch alleged actions that Justice Heiple took in his capacity as a supreme court justice to supervise personnel matters in the Third District. To allow Welch's suit against Justice Heiple in his individual capacity would limit Justice Heiple's ability to make administrative decisions. Therefore, the suit threatens to control the actions of the State, and the Court of Claims provides the only forum for such relief.

Welch argues that she alleged that Justice Heiple took deliberate action by ordering a salary reduction for reasons totally unrelated to

her professional competence. However, in *Wozniak*, the complaint alleged that the defendant made false and disparaging statements related to Wozniak's professional competence. Welch argues that the remarks made in *Wozniak* were legal. Welch asserts that, by contrast, Justice Heiple was acting with malice in violating rule 5(D)(1). Welch argues that Justice Heiple's malicious conduct is outside the scope of a State employee's authority. We agree with the legal contention that malice, if well pleaded, is outside the scope of a State employee's authority and must be brought in the circuit court and not the Court of Claims. *Cf. Management Ass'n of Illinois, Inc. v. Board of Regents of Northern Illinois University*, 248 Ill. App. 3d 599, 616 (1993). However, Welch has failed to adequately plead malicious conduct by Justice Heiple.

To plead malice, there must be specific facts supporting the allegations, which, if proved, would show malicious conduct. *Management Ass'n*, 248 Ill. App. 3d at 617. Here, the facts alleged indicate intentional acts. However, Welch's conclusory statements regarding Justice Heiple's actions that were "taken with malice" against her "as an older employee, a female and/or as a former employee of his political rival, Justice Tobias Barry" are not supported by specific facts which, if proved, would show malicious conduct. Moreover, it is in keeping with the Act to distinguish between malicious acts for one's own purposes and those believed by the employee to be in furtherance of the State employer's purposes. *Management Ass'n*, 248 Ill. App. 3d at 617. The facts alleged are consistent with an intent to further the business of the Illinois Supreme Court and thus can be considered within the scope of employment. For these reasons, the tort claim is properly viewed as a claim against the State for damages sounding in tort. *Cf. Nikelly v. Stubing*, 204 Ill. App. 3d 870, 876 (1990) (absence of specific facts showing personal animosity or acts committed for any purpose other than what defendant perceived to be the best interests of the agency were, therefore, actions against the State). Accordingly, we find that the trial court correctly held that count II was barred by sovereign immunity.

■ Welch argues in her reply brief that Justice Heiple's administrative authority over the Third District is more narrowly drawn, and sovereign immunity does not insulate a judge from a civil suit where, as here, it is alleged that administrative action is taken arbitrarily and solely for reasons of personal bias or political retaliation. Welch asserts that the rules cannot be arbitrarily modified to suit Justice Heiple's political whimsy without exposing him to liability. Welch cites *Rutan v. Republican Party*, 497 U.S. 62, 111 L. Ed. 2d 52, 110 S. Ct. 2729 (1990), and *Forrester v. White*, 484 U.S. 219, 98 L. Ed. 2d 555, 108 S. Ct. 538

(1988), in support of her argument. We are not persuaded by Welch's argument. First, neither *Forrester* nor *Rutan* is relevant. *Rutan* involved the unconstitutional practice of conditioning a hiring decision on political belief and association. *Forrester* concerns the question of whether a state court judge had absolute judicial immunity after discriminating against an employee. Public official immunity is directly aimed at protecting State employees personally rather than directly protecting the interests of the State and is not jurisdictional in nature. *Janes*, 254 Ill. App. 3d at 957. Regardless, it appears that Welch again confuses the merits of her claim with the concept of sovereign immunity. We cannot decide whether Welch does or does not have a claim. We determine only whether the circuit court is the appropriate forum for bringing her claim.

Welch next contends that the trial court erred in granting defendants' motion to dismiss count II on the ground of preemption of the Human Rights Act (775 ILCS 5/8—111(C) (West 1998)) to the extent that age bias and gender bias were pleaded as motivating factors. Welch asserts that the trial court erroneously applied *Maksimovic v. Tsogalis*, 177 Ill. 2d 511 (1997).

■ If a common-law action is in essence one that seeks redress for a "civil rights violation" as defined by the Human Rights Act and there is no basis for the action other than the Human Rights Act, the circuit court lacks jurisdiction to adjudicate the claim. See *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 516 (1994). Whether the circuit court may exercise jurisdiction over a tort claim depends upon whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Human Rights Act itself. *Maksimovic*, 177 Ill. 2d at 517.

In *Geise*, the plaintiff alleged that her employer negligently hired and retained a manager who sexually harassed the plaintiff. *Geise*, 159 Ill. 2d at 511-12. The court held that, but for the Human Rights Act's proscription against sexual harassment, the plaintiff would have had no legally cognizable claim against her employer. *Geise*, 159 Ill. 2d at 517. Absent the Human Rights Act's prohibition of sexual harassment, the employer's hiring and retention of an employee whose conduct created a hostile work environment would not have been an actionable tort. The court held that such tort claims were in essence claims of a "civil rights violation" and, accordingly, could be brought before the Human Rights Commission only. *Geise*, 159 Ill. 2d at 518.

Contrary to *Geise*, in *Maksimovic* the tort claims of assault, battery, and false imprisonment existed separately from a cause of action for sexual harassment under the Human Rights Act. In the assault count, the plaintiff alleged that her manager threatened to "give her a

stiff one up the ass," ordered her to perform oral sex on him, commented on her breasts, and accused her of being too friendly with the customers. *Maksimovic*, 177 Ill. 2d at 515. In the battery count, the plaintiff alleged that the manager placed his hand under her skirt and grabbed her leg, grabbed her buttocks, and touched her while attempting to kiss her. In the false imprisonment count, the plaintiff alleged that the manager confined her in a walk-in cooler where he made sexual advances toward her. The court found that the sexual harassment aspect of the case was merely incidental to what were otherwise ordinary common-law tort claims. *Maksimovic*, 177 Ill. 2d at 517. The court held that, to the extent that the plaintiff alleged the elements of each of the torts without reference to legal duties created by the Human Rights Act, she had established a basis for imposing liability on the defendants independent of the Human Rights Act. *Maksimovic*, 177 Ill. 2d at 517.

The issue in this case then is whether Welch's claim of tortious interference is inextricably linked to her claim of age and gender bias. Welch argues that she does not claim damages arising solely from the breach of a legal duty arising under the Human Rights Act but from the wrongful interference with a contract of employment and, to the extent that age and gender were alleged as improper motivating factors, contends that these were merely incidental and not inextricably linked to the Human Rights Act. We disagree.

■ To establish intentional interference with a contract, the plaintiff must show (1) a valid contract; (2) that the defendant was aware of the contract; (3) the defendant's intentional and unjustified inducement of a breach; (4) a subsequent breach caused by the defendant's wrongful conduct; and (5) resulting damages. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 154-55 (1989). As Welch's employer, Justice Heiple is protected by a qualified privilege. See *Vajda v. Arthur Andersen & Co.*, 253 Ill. App. 3d 345, 358-59 (1993). Welch must therefore show that Justice Heiple's actions were unjustified or malicious. *HPI*, 131 Ill. 2d at 156. The purpose alleged in the complaint for Justice Heiple's actions is based on age and gender discrimination. Discriminations on the basis of age and gender are civil rights violations. 775 ILCS 5/1—102, 2—102 (West 1998). Based on the allegations in the complaint, Justice Heiple's interference with Welch's contract amounted to wrongful and unjustified conduct prohibited by the Human Rights Act. See *Anderson v. Pistner*, 148 Ill. App. 3d 616, 619-20 (1986) (tortious interference of contract alleging age discrimination preempted by Human Rights Act); *Bowers v. Radiological Society of North America, Inc.*, 57 F. Supp. 2d 594, 600 (N.D. Ill. 1999) (tortious interference of contract

against plaintiff's manager alleging sexual harassment is inextricably linked to Human Rights Act). Because the tortious interference charge cannot stand alone without the improper motivation of conduct prohibited by the Human Rights Act, the claim is inextricably linked to the Human Rights Act, which provides Welch with an exclusive remedy. We therefore affirm the court's order dismissing count II as preempted by the Human Rights Act.

Welch next appears to assert that Justice Heiple should be judicially estopped from claiming that the Human Rights Act preempts her claims based on age and gender discrimination. Welch argues that Justice Heiple cannot claim that preemption applies here because he allegedly claimed in another proceeding that he could not be sued individually under the Human Rights Act.

■ The doctrine of judicial estoppel is flexible and not reducible to a formula. However, the following five elements are generally necessary: (1) the two positions must be taken by the same party; (2) the positions must be taken in judicial proceedings; (3) the positions must be given under oath; (4) the party must have successfully maintained the first position and received some benefit; and (5) the two positions must be totally inconsistent. *Bidani v. Lewis*, 285 Ill. App. 3d 545, 550 (1996).

•■ Apparently, Welch filed a motion to amend her complaint before the Human Rights Commission to add Justice Heiple as an individual party pursuant to section 6—101(B) of the Human Rights Act (775 ILCS 5/6—101(B) (West 1996)). Defendants, the Illinois Supreme Court and the Third District, objected because Justice Heiple was not an employer as defined in the Human Rights Act (775 ILCS 5/2—101(B)(1) (West 1996)) and Welch's charge of gender discrimination could only be brought against an employer (see 775 ILCS 5/2—102(A) (West 1996)). The administrative law judge agreed and denied Welch's motion to amend her complaint.

We find no evidence of judicial estoppel. Justice Heiple's position in the present case is not totally inconsistent with the previous position taken by the supreme court and the Third District before the Human Rights Commission. In the present case, Justice Heiple does not claim now that he can be sued under the Human Rights Act on the basis of sexual harassment. He claims that the Human Rights Act preempts Welch's claims of discrimination based on age and gender.

Welch last contends that the trial court abused its discretion in denying her motion to amend count I. We note again that Welch does not contend that the breach of contract claim of count I as originally pleaded should be brought in the circuit court. Welch asserts that the proposed amended claim in count I cured the jurisdictional deficien-

cies by seeking declaratory and equitable relief for a continuing wrong and damages not solely for past conduct.

■ The right to amend is not absolute. *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 275 Ill. App. 3d 452, 460 (1995). A trial court should consider several factors in determining whether to permit an amendment, including, *inter alia*, whether the amendment would cure a defect in the pleading. *Lake County Grading*, 275 Ill. App. 3d at 460. The decision whether to grant leave to amend a pleading rests within the sound discretion of the trial court, whose ruling will not be disturbed on review absent an abuse of that discretion. *Lake County Grading*, 275 Ill. App. 3d at 461.

■ It is well established that a breach of contract claim against the State is a present claim for relief barred by sovereign immunity. See, *e.g.*, *Smith v. Jones*, 113 Ill. 2d 126, 132-33 (1986). Claims for prospective relief, such as an injunction to prevent a State official from taking action in excess of his delegated authority, are not barred by sovereign immunity. *Senn Park Nursing Center v. Miller*, 104 Ill. 2d 169, 189 (1984).

■ With these principles in mind, we turn to the proposed amended complaint. Welch alleged in her amended complaint that she was offered employment as a research attorney for the Third District at a salary of $39,464 per year; that, in consideration, she agreed to transfer from her position as law clerk; that Welch began work as a research attorney; that Welch had a valid, binding, enforceable contract of employment; that the supreme court ratified an act of tortious interference with the employment agreement by reducing her salary to $32,571; that the supreme court has refused to correct her salary and reinstate her at the rate she is entitled to pursuant to the employment agreement; that Welch has sustained mental suffering and damages in excess of $50,000, plus loss of use of salary at an annual rate in excess of $8,000, plus loss of pension benefits in excess of $50,000; and that the supreme court has claimed sovereign immunity from her damages. Welch asks the court to enter judgment declaring the parties' rights and duties under the agreement, declaring that the supreme court unlawfully withheld the difference between the salary contracted for, declaring that Welch is entitled to cost-of-living raises granted to research attorneys statewide, and further declaring that the supreme court is jointly and severally liable for all damages sustained by Welch as a consequence of Justice Heiple's act of tortious interference with contract.

The characterization of an action depends upon the factual underpinnings of the case and the law necessary to arrive at a conclusion. *President Lincoln Hotel Venture v. Bank One*, 271 Ill. App. 3d

1048, 1057 (1994). A review of both complaints reveals that the thrust of the amended claim remained a claim for damages for breach of contract. We agree with defendants that there is no real difference between a declaration that Welch had a contractual right to be paid the salary she was offered in 1994 and a damage award entitling her to that amount. In substance, the factual allegations of Welch's complaint are that the supreme court exceeded its authority by breaching the employment contract and Welch's action is one seeking to enforce the terms of the contract. Welch's claim, therefore, alleges a breach of contract. Such a claim is one against the State, barred by the doctrine of sovereign immunity, and must be brought in the Court of Claims.

Other courts have rejected the plaintiffs' efforts to cast breach of contract claims in equitable terms to avoid sovereign immunity. In *Children's Memorial Hospital v. Mueller*, 141 Ill. App. 3d 951, 955-56 (1986), the court found that, although the plaintiffs' claims were stated in terms of indemnification and framed as an action for declaratory judgment, both complaints indicated that the principal relief sought against the Department of Children and Family Services was a present claim for money damages, subjecting the State to possible liability, which was barred by sovereign immunity. *Cf. President Lincoln Hotel*, 271 Ill. App. 3d at 1053, 1057 (complaint seeking declaratory judgment, injunctive relief, and specific performance against State Treasurer is a contract action against State within recognized exception to bar of sovereign immunity); *Brucato v. Edgar*, 128 Ill. App. 3d 260, 267 (1984) (although prayer for relief was framed in equitable terms, the relief sought is substantively a claim for monetary damages from the State arising from a contract with the State).

Welch argues that her proposed claim alleged a continuing wrong and the damages are not solely for past conduct. Welch cites *Rockford Memorial Hospital v. Department of Human Rights*, 272 Ill. App. 3d 751 (1995). However, in *Rockford Hospital*, the Department of Human Rights was investigating a discrimination charge over which it had no jurisdiction, and the plaintiff sought a declaratory judgment and injunction to bar the investigation. Unlike Welch's present claim for relief, which arose from the original breach, the claim in *Rockford Hospital* fits squarely within the prospective injunctive relief exception. See *Rockford Memorial*, 272 Ill. App. 3d at 757.

Welch cites *E.H. Swenson & Son, Inc. v. Lorenz*, 36 Ill. 2d 382 (1967), in support of her argument that a cause of action for declaratory judgment may be maintained in the circuit court to determine a State agency's liability for unlawfully withholding amounts due under a contract. Contrary to the allegations of the complaint in the present case, there the action was, in essence, a review of the legality of the

defendants' withholding of funds from plaintiffs and, as such, was not a suit against the State. *E.H. Swenson*, 36 Ill. 2d at 385.

Welch argues that the trial court erred in considering only whether the proposed amendment cured the jurisdictional problem. Welch asserts that the trial court failed to consider whether (1) no other opportunity to amend could be identified; (2) no surprise or prejudice would be sustained by defendants by permitting an amendment; and (3) Welch's requests to amend were timely. We find no abuse of discretion. Where it is apparent that even after amendment no cause of action can be stated, leave to amend should be denied. See *City of Elgin v. County of Cook*, 169 Ill. 2d 53, 71-72 (1995). Accordingly, because the proposed amendment would still have been barred by sovereign immunity, the trial court did not abuse its discretion in denying Welch's motion to amend.

Based on the foregoing, we affirm the decision of the circuit court of La Salle County.

Affirmed.

GEIGER and CALLUM, JJ., concur.