THE PEOPLE *ex rel.* LISA MADIGAN, Attorney General of the State of Illinois, *et al.*, Plaintiffs, v. EXCAVATING AND LOWBOY SERVICES, INC., *et al.*, Defendants (The City of Harvey, Third-Party Plaintiff-Appellant; The Department of Transportation *et al.*, Third-Party Defendants-Appellees (Achilles, Inc., *et al.*, Third-Party Defendants)).

First District (5th Division)   No. 1—07—3345

Opinion filed February 13, 2009.

Garrett L. Boehm, Jr., and Eydie R. Glassman, both of Johnson & Bell, Ltd., of Chicago, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Laura Wunder, Assistant Attorney General, of counsel), for appellees.

JUSTICE TOOMIN delivered the opinion of the court:

In the proceedings below, the trial court dismissed the City of Har-

vey's (the City) third-party complaint against the Illinois Department of Transportation (IDOT) and its former secretary,[1] Timothy Martin, after determining that relief was barred by the doctrine of sovereign immunity and the complaint failed to plead sufficient facts to substantiate the claim. On appeal, the City contends: (1) the State expressly consented to suit based on the Illinois Environmental Protection Act (Environmental Act) (415 ILCS 5/1 *et seq.* (West 2004)); (2) dismissal was erroneous as to Martin; (3) the dismissal was inequitable; and (4) its amended complaint was factually sufficient.

## BACKGROUND

In light of the narrow scope of our review, we refer only to evidentiary matters relevant to the issues raised by the City's appeal.

The State of Illinois (State) filed suit against Excavating & Lowboy Services, Inc. (E&L), and one of its owners, Daniel Serritella, alleging E&L was illegally operating a dump site in Harvey. Thereafter, a second action was instituted for similar conduct at another site in Harvey, known as Worthy Park. This latter action alleged that E&L and Serritella violated the Environmental Act and created a public nuisance by disposing of waste in an area of Worthy Park, albeit with the permission of the City and its park district. The complaint also alleged that E&L and Serritella had allowed other companies to dump on the site for a fee.

The State filed an amended complaint consolidating both actions and adding the City and its park district as defendants. The amended complaint further alleged that the City and the park district "caused or allowed" illegal dumping to occur at Worthy Park, continuing even after E&L and Serritella discontinued operations at the site.

The park district's answer admitted ownership of the park but denied any culpability for the illegal dumping at either site. The City's answer also denied responsibility for the illegal dumping. An agreed order was entered on the State's motion for preliminary injunction, requiring the City and park district not to "cause or allow" dumping at Worthy Park for the duration of the litigation and to post signs indicating the prohibition against dumping at the site. Additionally, on October 20, 2006, default judgment in favor of the State of Illinois was entered against E&L and Serritella in the amount of $1,467,720.

On December 20, 2006, the City filed a third-party complaint against IDOT, Martin, and 15 companies; it was amended on August

---

[1]The caption used by the parties in the trial court, as well as in this court, refers to this office as "director" of the Department of Transportation. As the proper designation for this office is the "Secretary of Transportation," we have used it in our caption and utilize it herein in the interest of accuracy.

14, 2007. The City's amended third-party complaint alleged liability on the part of the defendants, without differentiation, and sought injunctive relief, remedial relief, and monetary damages from the defendants. A counterclaim was also filed naming the State, IDOT, Martin, and E&L, as well as Daniel Serritella. According to IDOT and Martin's brief, the City initiated suit in the Court of Claims against the State, IDOT, and Martin on December 20, 2006; however, we were unable to verify that representation with the Court of Claims.

IDOT and Martin moved to dismiss both of the City's third-party complaints as well as the counterclaim on the bases of sovereign immunity and the factual insufficiency of the complaint. Although the motion was fully briefed by the parties and the order references its entry on a hearing date, the extent of the hearing is unclear. In turn, the trial court entered dismissal on all counts as to IDOT and Martin pursuant to section 2—619(a)(1) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(1) (West 2004)), concluding sovereign immunity operated as a bar to the City's claims and counterclaims and, more specifically, that there was no waiver of sovereign immunity pursuant to section 45(d) of the Environmental Act. Dismissal was similarly granted as to all counts naming IDOT and Martin pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2004)), finding the complaint failed to allege sufficient facts entitling the City to relief. All counts were dismissed with prejudice.

On November 7, 2007, the trial court granted the City's motion for a finding that the August 30, 2007, order was final and appealable pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)). The City, in turn, filed its notice of appeal on December 5, 2007.

## ANALYSIS

■ Orders of dismissal for lack of subject matter jurisdiction are reviewed de novo. *Siakpere v. City of Chicago*, 374 Ill. App. 3d 1079, 1081, 872 N.E.2d 495, 497 (2007). Reviewing courts "can sustain the decision of the circuit court on any grounds which are called for by the record regardless of whether the circuit court relied on the grounds and regardless of whether the circuit court's reasoning was sound." *City of Chicago v. Holland*, 206 Ill. 2d 480, 492, 795 N.E.2d 240, 247-48 (2003). Additionally, since the resolution of the issues in the present cases requires us to construe statutes, our review on those issues is also de novo. *Illinois Department of Healthcare & Family Services v. Warner*, 227 Ill. 2d 223, 229, 882 N.E.2d 557, 560 (2008).

### Sovereign Immunity and Environmental Protection Act Litigation

We first address the circuit court's determination that the City's third-party complaint was barred by the doctrine of sovereign im-

munity. At common law the doctrine precluded suits against the government absent consent on behalf of the entity to be sued. *Jackson v. Alverez*, 358 Ill. App. 3d 555, 559, 851 N.E.2d 1159, 1163 (2005). Notably, statutory immunity is an affirmative defense and is properly addressed in a section 2—619 motion. *Williams v. Board of Education of the City of Chicago*, 222 Ill. App. 3d 559, 562, 584 N.E.2d 257, 260 (1991). The City contends this is a matter of first impression and we note that our research did not uncover any controlling precedent addressing whether the Environmental Act contains an exception to sovereign immunity.

After the abolition of the doctrine of sovereign immunity, "[e]xcept *** as provide[d] by law" (Ill. Const. 1970, art. XIII, §4), the legislature resurrected the bar by enacting the State Lawsuit Immunity Act (Immunity Act), which states, subject to specifically delineated exceptions, "[T]he State of Illinois shall not be made a defendant or party in any court" (745 ILCS 5/1 (West 2004)). See *PHL, Inc. v. Pullman Bank & Trust Co.*, 216 Ill. 2d 250, 267-68, 836 N.E.2d 351, 361 (2005). Consequently, neither the State nor any of its departments can be sued in "its own court or any other court without its consent." *Welch v. Illinois Supreme Court*, 322 Ill. App. 3d 345, 350, 751 N.E.2d 1187, 1192 (2001).

The Court of Claims Act (Claims Act) (705 ILCS 505/1 *et seq.* (West 2004)), which became effective in 1945, vests the Court of Claims with exclusive jurisdiction over, *inter alia*, tort cases against the State. See 705 ILCS 505/8(d) (West 2004); *Jackson*, 358 Ill. App. 3d at 559-60, 851 N.E.2d at 1163. Subsection 8(a) of the Claims Act vests the Court of Claims with "exclusive jurisdiction" over "[a]ll claims against the State founded upon any law of the State of Illinois or upon any regulation adopted thereunder by an executive or administrative officer or agency." 705 ILCS 505/8(a) (West 2004). Significantly, one of the exceptions referenced in the Immunity Act defers to the provisions of the Claims Act.

■ Under Illinois law, a defendant is protected by sovereign immunity where: (1) it is an arm of the State; (2) the claim against it is a present claim potentially exposing the State to liability; and (3) there is no applicable exception to undercut such immunity. *City of Chicago v. Board of Trustees of the University of Illinois*, 293 Ill. App. 3d 897, 901, 689 N.E.2d 125, 127 (1997). Present claims are distinguished from those claims seeking injunctive or declaratory relief, specifically prospective injunctive relief. See *PHL, Inc.*, 216 Ill. 2d at 267-68, 836 N.E.2d at 361; see also *Rockford Memorial Hospital v. Department of Human Rights*, 272 Ill. App. 3d 751, 755-56, 651 N.E.2d 649, 653-54 (1995).

The same result obtains for suits naming state employees, as those are generally nothing more than suits against the State. *Welch*, 322 Ill. App. 3d at 351, 751 N.E.2d at 1192. Yet, being a state employee or operating within the scope of state employment will not suffice to immunize one from individual liability. *Currie v. Lao*, 148 Ill. 2d 151, 158, 592 N.E.2d 977, 980 (1992). "Where the alleged negligence is the breach of a duty imposed on the employee *solely* by virtue of his state employment, the Court of Claims has exclusive jurisdiction. If, however, the duty that he is accused of breaching is imposed independently of his state employment, the claim may be heard in circuit court." (Emphasis in original.) *Loman v. Freeman*, 229 Ill. 2d 104, 113, 890 N.E.2d 446, 453 (2008).

Notably, it has long been recognized that state officers are not cloaked with immunity when they enforce unconstitutional statutes or act in violation of the law. *Moline Tool Co. v. Department of Revenue*, 410 Ill. 35, 37, 101 N.E.2d 71, 72 (1951); see also *PHL, Inc.*, 216 Ill. 2d at 261, 836 N.E.2d at 357. "An action against a State official for conduct in his official capacity will withstand a motion to dismiss the complaint on sovereign immunity grounds if the complaint alleges that the official is enforcing an unconstitutional law or violating a law of Illinois and thus acting beyond his authority." *Smith v. Jones*, 113 Ill. 2d 126, 131, 497 N.E.2d 738, 740 (1986). As our supreme court observed in *Currie v. Lao*:

> "The determination of whether an action is in fact a suit against the State turns upon an analysis of the issues involved and the relief sought, rather than the formal designation of the parties. [Citations.] An action brought nominally against a State employee in his individual capacity will be found to be a claim against the State where a judgment for the plaintiff could operate to control the actions of the State or subject it to liability. [Citation.]" *Currie*, 148 Ill. 2d at 158, 592 N.E.2d at 980.

See also *Jackson*, 358 Ill. App. 3d at 560, 851 N.E.2d at 1163-64. Thus, Illinois courts have recognized that the overarching purpose of sovereign immunity is twofold, the protection of state functions from interference as well as the preservation and protection of state funds. *People ex rel. Manning v. Nickerson*, 184 Ill. 2d 245, 248, 702 N.E.2d 1278, 1280 (1998).

The salutary basis of the doctrine was underscored in *People ex rel. Manning v. Nickerson*, where our supreme court cautioned:

> "The doctrine of sovereign immunity, however, is not about fairness. The legislature has conferred immunity upon the state, and the legislature—only the legislature—can determine when and where claims against the state will be allowed. With regard to tort

claims, the legislature's directive could not be more clear: tort claims against the state must be brought in the Court of Claims." *Manning*, 184 Ill. 2d at 249, 702 N.E.2d at 1280.

While consent to liability may be enacted by the legislature, any such consent "must be, however, 'clear and unequivocal.' " *In re Special Education of Walker*, 131 Ill. 2d 300, 303, 546 N.E.2d 520, 522 (1989). "Consent to be sued cannot be implied when there is an express statutory provision to the contrary." *S.J. Groves & Sons Co. v. State*, 93 Ill. 2d 397, 404, 444 N.E.2d 131, 134 (1982).

Although the City implicitly concedes that sovereign immunity would bar the majority of its claims, it asserts that the claims premised on section 45(d) of the Environmental Act fall outside that bar. The Environmental Act provides a plenary statement of findings by the General Assembly highlighting the purposes and rationale of the legislation. 415 ILCS 5/2 (West 2004). Subsection 2(a)(ii) instructs "that because environmental damage does not respect political boundaries, it is necessary to establish a unified state-wide program for environmental protection." 415 ILCS 5/2(a)(ii) (West 2004). Then, subsection (a)(iv) recognizes, "that it is the obligation of the State Government to manage its own activities so as to minimize environmental damage." 415 ILCS 5/2(a)(iv) (West 2004). In turn, subsection (a)(v) provides, "that in order to alleviate the burden on enforcement agencies, to assure that all interests are given a full hearing, and to increase public participation in the task of protecting the environment, private as well as governmental remedies must be provided." 415 ILCS 5/2(v) (West 2004).

The prevailing rationale underlying the enactment is succinctly stated in subsection (b):

> "It is the purpose of this Act, as more specifically described in later sections, to establish a unified, state-wide program supplemented by private remedies, to restore, protect and enhance the quality of the environment, and to assure that adverse effects upon the environment are fully considered and borne by those who cause them." 415 ILCS 5/2(b) (West 2004).

Subsection (c), further, directs that the "terms and provisions of this Act shall be liberally construed so as to effectuate the purposes" explained in subsection (b). 415 ILCS 5/2(c) (West 2004).

Actions brought under the Environmental Act are governed generally by section 45 thereof. 415 ILCS 5/45 (West 2004). Specifically, subsection (a) of section 45 provides, in part, that "No existing civil or criminal remedy for any wrongful action shall be excluded or impaired by this Act." 415 ILCS 5/45(a) (West 2004). Additionally, subsection (b) mandates that "Any person adversely affected in fact by a viola-

tion of this Act, any rule or regulation adopted under this Act, any permit or term or condition of a permit, or any Board order may sue for injunctive relief against such violation." 415 ILCS 5/45(b) (West 2004). Subsection (b) additionally provides that such action, subject to other exceptions, cannot be brought before pursuing administrative remedies. 415 ILCS 5/45(b) (West 2004).

Central to the present appeal is subsection (d) of section 45, which sets forth the following:

"If the State brings an action under this Act against a person with an interest in real property upon which the person is alleged to have allowed open dumping or open burning by a third party in violation of this Act, which action seeks to compel the defendant to remove the waste or otherwise clean up the site, the defendant may, in the manner provided by law for third-party complaints, bring in as a third-party defendant a person who with actual knowledge caused or contributed to the illegal open dumping or open burning, or who is or may be liable for all or part of the removal and cleanup costs. The court may include any of the parties which it determines to have, with actual knowledge, allowed, caused or contributed to the illegal open dumping or open burning in any order that it may issue to compel removal of the waste and cleanup of the site, and may apportion the removal and cleanup costs among such parties, as it deems appropriate. However, a person may not seek to recover any fines or civil penalties imposed upon him under this Act from a third-party defendant in an action brought under this subsection." 415 ILCS 5/45(d) (West 2004).

The term "person" as used in subsection (d) is defined as "any individual, partnership, co-partnership, firm, company, limited liability company, corporation, association, joint stock company, trust, estate, political subdivision, state agency, or any other legal entity, or their legal representative, agent or assigns." 415 ILCS 5/3.315 (West 2004).

The State's obligations under the Environmental Act are delineated thereunder: "The State of Illinois and all its agencies, institutions, officers and subdivisions shall comply with all requirements, prohibitions, and other provisions of the Act and of regulations adopted thereunder." 415 ILCS 5/47(a) (West 2004).

Resolving whether sovereign immunity serves to bar the City's complaint requires us to interpret and determine the interplay between legislation relied upon by the parties. The cardinal rule of interpreting statutes, to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature. *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311, 780 N.E.2d 660, 664 (2001). The best evidence of legislative intent is the statutory language itself, which must be given its plain and

ordinary meaning. *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 181, 874 N.E.2d 1, 8 (2007). In examining a statute, it must be read as a whole and all relevant parts should be considered. *People v. Reed*, 177 Ill. 2d 389, 393, 686 N.E.2d 584, 586 (1997). Where there is an alleged conflict between statutes, we are bound by the oft-recited duty to interpret such statutes to avoid inconsistency, while still giving effect to both statutes, as long as our "interpretation is reasonably possible." *Ferguson*, 202 Ill. 2d at 311-12, 780 N.E.2d at 664.

Our review of the relevant statutes leads us to conclude that neither of the enactments is ambiguous in any way. Furthermore, the language employed, particularly in the Environmental Act with its extensive explanatory provisions (415 ILCS 5/2 (West 2004)), is clear and the meaning, intent, and purpose are easily ascertained. We find significant that the Environmental Act contemplates and even sanctions the bringing of suits against the State and its agencies. See 415 ILCS 5/3.315, 2(a)(iv), 47 (West 2004). We perceive that the terms of the Environmental Act confer a liberal grant of authority for suits against those alleged to have harmed or compromised our environment. However, this does not conclude our analysis as there is equally significant import to what the Environmental Act does not provide.

It is manifest that the Environmental Act does not by any of its terms or provisions evince an intent to override other statutes governing jurisdictional concerns, including the Immunity Act or the Claims Act. Standards which guide our interpretation of related statutes are well established. In *Flynn v. Industrial Comm'n* our supreme court cautioned:

> "We presume that the legislature intends that two or more statutes which relate to the same subject are to be read harmoniously, so that no provisions are rendered inoperative. [Citation.] Statutes relating to the same subject must be compared and construed with reference to each other so that effect may be given to all of the provisions to the extent possible, even where an apparent conflict exists. [Citations.] Specific statutory language takes precedence over more general language relating to the same topic. [Citations.]" *Flynn v. Industrial Comm'n*, 211 Ill. 2d 546, 555, 813 N.E.2d 119, 125 (2004).

Alternatively, related statutes are to be considered *in pari materia* to the extent doing so is possible. *Holly v. Montes*, 231 Ill. 2d 153, 161-62, 896 N.E.2d 267, 273 (2008). "Where the language of a statute is unclear, it is appropriate for the court to compare other statutes on the same subject matter, even though not strictly *in pari materia*." *Lee County Board of Review v. Property Tax Appeal Board*, 278 Ill. App. 3d 711, 721, 663 N.E.2d 473, 480 (1996).

■ Here we discern that there is nothing unclear, contradictory or in conflict between or among these statutes. Significantly, we find there is nothing about the terms of the Environmental Act that would countermand the specific and unequivocal language of either the Immunity Act or the Claims Act. Although the Environmental Act uses the phrase "may sue" as to third parties, this is not the same as conferring jurisdiction in any designated forum. Nor does this language evince an intent on behalf of the legislature mandating the Environmental Act to contradict, override, or supercede any other statutes in this regard. Moreover, the use of the phrase "is or may be liable," in our opinion, bolsters this position as this directory grant of authority demonstrates a recognition by the legislature of the potential influence other factors could have on an action or potential determination of liability, namely, jurisdictional issues. See *Reed*, 177 Ill. 2d at 393, 686 N.E.2d at 586 ("Legislative use of the word 'may' is generally regarded as indicating a permissive or directory reading, whereas use of the word 'shall' is generally considered to express a mandatory reading").

The Environmental Act, *inter alia*, provides for accountability through suits against its alleged violators. However, it is conspicuously silent as to jurisdictional concerns as it does not designate the proper forum wherein claims are to be heard or redress sought. The void in the terms of the Environmental Act is, however, adequately compensated by the established rules found in the Claims Act and the Immunity Act. Accordingly, we disagree with the City's contention that the trial court's ruling "judicially eliminated" any terms in the Environmental Act.

We further note that although the Environmental Act demonstrates a clear intent to hold those who allegedly damage the environment accountable for their actions, it does not contain an express consent by the State to be sued or otherwise waive sovereign immunity. Waivers of sovereign immunity must be " 'clear and unequivocal' " or, in the alternative, must be "affirmatively declared." *In re Special Education of Walker*, 131 Ill. 2d at 303, 305-06, 546 N.E.2d at 521-22, 523. Examples of clear, unequivocal, and affirmative declarations that the State waives sovereign immunity appear in the Illinois Public Labor Relations Act (5 ILCS 315/25 (West 2002)) and the Illinois Educational Labor Relations Act (115 ILCS 5/19 (West 2002)). Likewise, section 1 of the Immunity Act declares that "the Illinois Public Labor Relations Act, the Court of Claims Act, [and] the State Officials and Employees Ethics Act" are exceptions to the general rule that "the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1 (West 2004). As we perceive no applicable

exception for cases brought pursuant to the Environmental Act, in turn, we find neither an express consent on the part of the State to be sued nor a waiver of sovereign immunity enacted by the legislature vesting the circuit court with jurisdiction over such alleged violations.

Although we concur in the ultimate decision of the trial court in granting the motion to dismiss with prejudice as to both IDOT and Martin, our conclusion employs different reasoning. See *Beacham v. Walker*, 231 Ill. 2d 51, 61, 896 N.E.2d 327, 333 (2008) (holding that reviewing courts may affirm the decision of the trial court upon any basis found in the record). Namely, it is the interplay of the Environmental Act—in its entirety—with other statutes that guides our conclusion that the dismissal was proper for lack of subject matter jurisdiction over the State, its agencies, and employees under the circumstances.

### Sufficiency of the Complaint as to Timothy Martin

Having determined the circuit court lacked jurisdiction to hear the cause, we find it unnecessary to consider the trial court's concomitant decision as to the complaint's factual sufficiency. However, inasmuch as this appeal also addresses the propriety of the order entered as to IDOT's then-secretary, Martin, we will briefly address the complaint in light of the foregoing discussion.

Our review of the amended complaint does not reveal any reason why the ruling as to IDOT should not apply equally to Martin. Even taking, as we must, all well-pleaded facts as true, the complaint fails to plead any facts as to any of the defendants, let alone any facts as to Martin, from which reasonable inferences could be drawn or that would entitle the City to relief. See *Doe v. Chicago Board of Education*, 213 Ill. 2d 19, 28, 820 N.E.2d 418, 424 (2004). Consequently, our finding as to IDOT cloaks Martin as well because the City's complaint lacks any factual allegations warranting a belief that the suit against him as secretary differed from a suit against the State. *Welch*, 322 Ill. App. 3d at 351, 751 N.E.2d at 1192. In this regard, we deem significant the absence of any allegations that Martin exceeded his authority, enforced an unconstitutional law, or violated the law such that he would be subject to individual liability. See *Moline Tool*, 410 Ill. at 37, 101 N.E.2d at 72; see also *PHL, Inc.*, 216 Ill. 2d at 261, 836 N.E.2d at 357. Likewise, the allegations are all made without distinguishing any of the named defendants in any fashion. Accordingly, the dismissal as to Martin was likewise proper.

### Injunctive Relief

■ Finally, the City argues the dismissal of its complaint was inequitable because it served to deprive the City of a forum where it

could obtain injunctive relief. In support, the City looks to the traditional reluctance of the Court of Claims to grant injunctive relief as evinced by its holding of *Garimella v. Board of Trustees of the University of Illinois*, 50 Ill. Ct. Cl. 350 (1996). In *Garimella*, an action against the University of Illinois medical school seeking relief based on a student's dismissal, the Court of Claims declined to enter an injunction stating its belief that the legislature never intended it to do so as to State agencies. *Garimella*, 50 Ill. Ct. Cl. at 353. The opinion continued: "Our decisions declining to exercise broad equitable powers have not evoked a legislative response to the contrary. In the absence of *specific* statutory provisions empowering us to issue injunctions we decline to do so." (Emphasis in original.) *Garimella*, 50 Ill. Ct. Cl. at 353.

This is hardly to say the Court of Claims lacks injunctive powers. In fact, the Claims Act is silent on the issue of available remedies, except insofar as it prescribes limitations on monetary awards. That the Court of Claims has not granted injunctive relief may be a matter of historical interest, yet we do not deem its failure to do so a consequence of any statutory prohibition foreclosing such a remedy. See *Brucato v. Edgar*, 128 Ill. App. 3d 260, 268, 470 N.E.2d 615, 621 (1984) ("It appears *** that it is the nature of the action, *i.e.*, whether it is one against the State, as well as the relief sought, which determines whether jurisdiction is in the Court of Claims").

The question of injunctive relief cannot be considered in a vacuum. The mechanics of injunctions are equally important as is the availability of such a remedy. Four well-established criteria guide the granting of injunctive relief: (1) the existence of a clearly ascertainable right in need of protection; (2) that irreparable harm will occur in the absence of the injunction; (3) that the injury is subject to inadequate remedy at law; and (4) a likelihood of success on the merits. *Jones v. Department of Public Aid*, 373 Ill. App. 3d 184, 193, 867 N.E.2d 563, 571 (2007). The grant of a preliminary injunction is an extraordinary remedy and courts do not favor the issuance of mandatory preliminary injunctions. *Lumbermen's Mutual Casualty Co. v. Sykes*, 384 Ill. App. 3d 207, 230, 890 N.E.2d 1086, 1106 (2008).

In our view, it is the adequacy of the available remedies that guides our analysis in the present case. That is, whether equity demands injunctive relief because monetary relief is insufficient. The interplay of compensatory and injunctive remedies was explained by another division of our court in *Lumbermen's* in this way:

> "It is a well-established rule that, if a party's injury can be adequately compensated through money damages, then it has an adequate remedy at law and does not need the extraordinary

remedy of injunctive relief. [Citations.] It is only when money is insufficient to compensate the injury, or when the injury cannot be properly quantified in terms of money, that injunctive relief is necessary. [Citation.]" *Lumbermen's*, 384 Ill. App. 3d at 230-31, 890 N.E.2d at 1106.

Viewing the circumstances of this case in these terms, we do not discern any inequity in requiring the City to pursue relief in the Court of Claims. As discussed above, the traditional reluctance of that tribunal to grant injunctive relief is not tantamount to its unavailability. Furthermore, even if it was not available in that forum, the same result would obtain as jurisdiction concerns the subject matter of the litigation and the parties and is not controlled by the remedy. Hence, we find no inequity in requiring the City to pursue its claims in the Court of Claims.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

TULLY and O'MARA FROSSARD, JJ., concur.