STATE BUILDING VENTURE, Plaintiff-Appellee, v. MAUREEN O'DONNELL, as Acting Director of the Department of Central Management Services, Defendant-Appellant.

First District (2nd Division)   No. 1—08—2714

Opinion filed May 26, 2009.

HOFFMAN, J., dissenting.

Tabet DiVito & Rothstein LLC, of Chicago (Gino L. DiVito, Daniel I. Konieczny, and Amy C. Crawford, of counsel), for appellant.

Schopf & Weiss LLP, of Chicago (Steven A. Weiss and Lesley G. Smith, of counsel), for appellee.

PRESIDING JUSTICE KARNEZIS delivered the opinion of the court:

The controversy in this case stems from a lease between plaintiff, State Building Venture (SBV), and defendant, Maureen O'Donnell, as acting Director of the Illinois Department of Central Management Services (CMS). CMS appeals from the circuit court's February 20, 2008, order denying its motion to dismiss count III of SBV's verified complaint and from the August 19, 2008, order granting SBV's motion for judgment on the pleadings. For the following reasons, we affirm the judgment of the circuit court.

## BACKGROUND

The parties entered into the lease agreement on or about November 11, 1983; however, the lease term did not commence until September 20, 1984. The lease includes commercial space on the second, first and lower levels of the James R. Thompson Building (Thompson Center) located at 100 West Randolph Street in Chicago.

The enabling statute relating to leasing commercial space in the Thompson Center provides in pertinent part:

"Portions or all of the commercial space, which includes the sub-basement, storage mezzanine, concourse, and ground and second floors of the

James R. Thompson Center
***

may be leased *** for terms not to exceed 15 years subject to renewals when in the judgment of the Director those leases or subleases will be in the best interests of the State." 20 ILCS 405/405—315(a)(s) (West 2006).

The parties' lease provides in pertinent part:

"The initial term of this Lease shall be 15 years.

* * *

Tenant shall have the option to renew this Lease beyond the initial term, on all of the same terms and conditions as are contained in this Lease, for 1 renewal period of 5 years ***, and Tenant shall have the further option to renew this lease beyond such renewal period, on all the same terms and conditions as are contained in this Lease, for 8 additional renewal periods of 5 years each."

Subsequent to entering into the lease, the parties maintained a harmonious relationship for over two decades until 2006 when SBV learned that CMS had allegedly "changed" its interpretation of the enabling statute and its rights thereunder. SBV filed its verified complaint on August 10, 2007. The complaint alleged that CMS had taken the position that the enabling statute gave the Director of CMS the discretion to determine whether to continue the lease at each five-year renewal period. SBV alleged that the enabling statute only gave CMS discretion at the time of entering into the lease to determine whether the lease was in the State's best interest, not at each subsequent renewal period. Count III, which is the only count at issue in this appeal, sought a declaratory judgment that the enabling statute initially authorized the State to enter into the lease with SBV and that the Director of CMS had no discretion to terminate the lease at each five-year renewal period.

CMS filed a motion to dismiss the complaint pursuant to sections 2—619(a)(1) and (a)(4) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(1), (a)(4) (West 2006)) (Code). On February 20, 2008, the court granted the motion in part but denied the motion with respect to count III.

The parties subsequently filed cross-motions for judgment on the pleadings pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 2006)). On August 19, 2008, the court granted SBV's motion and denied CMS's motion. The court found the language in the statute

to be unambiguous and interpreted the statute as meaning that the five-year renewals occurred automatically at SBV's sole discretion. The court stated that "[i]f the legislature had envisioned that the director at the time that the lease in the Thompson Center came up for renewal was going to make a recurring evaluation as to whether the renewal of that lease was in the best interest of the State, I think that the legislature would have said so. The legislature did not." The court further concluded that "the judgment of the director" as used in the statute referred "only to the judgment of the director at the time that the lease is being entered into."

CMS now appeals from the circuit court's February 20, 2008, and August 19, 2008, orders.

## ANALYSIS

### Count III of SBV's Complaint

On appeal, CMS first contends that SBV's claim for declaratory judgment should have been dismissed because it was barred by sovereign immunity and collateral estoppel and did not present a ripe controversy.

Count III was entitled "Declaratory Judgment." The allegations included:

"58. Based on CMS's new interpretation of the Enabling Statute, CMS claims that it was not authorized to enter into the Lease with SBV that allows for nine automatic renewal periods.

59. CMS's new interpretation of the Enabling Statute is pretextual and does violence to the plain meaning of the statute, to the terms of the Lease, and to the long-settled interpretation of the parties to the Lease that recognized that the Tenant has the sole, unfettered right to determine whether to terminate the Lease at the end of each such renewal period (other than at the end of the seventh and eighth extensions).

60. As described in paragraph 45 above, and each of its subparts, SBV has been and continues to be damaged by CMS's new interpretation of the Enabling Statute.

WHEREFORE, SBV asks that the Court enter a declaratory judgment finding that the Enabling Statute authorized the State to enter into the Lease with SBV, that the Lease is binding according to its terms, including options to renew for successive terms to 2044, and that the Court award SBV its costs, expenses and attorneys fees, and provide such other and further relief as justice requires."

### Sovereign Immunity

CMS argues that SBV's claim for declaratory judgment was barred by sovereign immunity because sovereign immunity bars "all claims that allege a breach of contract by the State."

The purpose of sovereign immunity is to protect the State from interference with the performance of governmental functions and to preserve and to protect state funds." *People ex rel. Manning v. Nickerson*, 184 Ill. 2d 245, 248 (1998). The Illinois Constitution of 1970 abolished sovereign immunity "[e]xcept as the General Assembly may provide by law." Ill. Const. 1970, art. XIII, §4. The legislature then enacted the State Lawsuit Immunity Act (745 ILCS 5/1 (West 2006)), which states that "the State of Illinois shall not be made a defendant or party in any court," except as provided in the Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 2006)) and the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 2006)). Whether a suit is brought against the State and thus barred by the doctrine of sovereign immunity does not depend on the identity of the formal parties but, rather, on the issues raised and the relief sought. *Balmoral Racing Club, Inc. v. Gonzalez*, 338 Ill. App. 3d 478, 485 (2003).

■ Sovereign immunity does not apply to a cause of action when a plaintiff is not attempting to enforce a present claim against the State, but seeks to enjoin the defendant from taking actions in excess of his delegated authority and in violation of the plaintiff's protectible legal interests. *Bio-Medical Laboratories, Inc. v. Trainor*, 68 Ill. 2d 540, 548 (1977); see also *Senn Park Nursing Center v. Miller*, 104 Ill. 2d 169, 188-89 (1984). For example, a breach of contract claim against the State is a present claim for relief barred by sovereign immunity, whereas a claim for prospective relief, such as an injunction to prevent a state official from taking action in excess of his delegated authority, is not barred by sovereign immunity. *Welch v. Illinois Supreme Court*, 322 Ill. App. 3d 345, 358 (2001).

■ Here, we find that count III of SBV's complaint for declaratory relief is a claim for prospective relief, rather than a present claim for relief, and is not barred by sovereign immunity. Count III sought a declaration to prevent the Director from exceeding her authority by "changing" her interpretation of the statute such that the Director had the discretion to determine whether the lease was in the State's best interests at the time of each renewal period. SBV sought an interpretation of the statute that authorized CMS to enter into the lease and sought to enjoin the Director from acting in derogation of her authority in the future contrary to the provision in the statute.

SBV also suggests that a threat of such action by CMS affects both the present and future value of the lease and therefore presents a true controversy that necessitates a declaration as to the rights of the parties as dictated by the statute at issue. Although SBV sought in its prayer for relief a declaration that the statute authorized the State to enter into the lease and that the lease's renewal terms were binding

upon the State until 2044, count III also included allegations that SBV has been damaged by CMS's "new" interpretation of the statute. The prayer for relief does not cancel out the allegations in count III and transform their claim from one of statutory interpretation to one of contract dispute. We note that the statute and the lease are inextricably "connected," but the rights of the parties are dictated by an interpretation of the statute. Therefore, we find that because SBV's claim is a claim for prospective relief (*i.e.*, interpretation of the statute), it is not barred by sovereign immunity.

## Collateral Estoppel

■ CMS also argues that SBV's claim is barred by collateral estoppel. CMS argues that SBV's claim was already litigated in a lawsuit that was filed by SBV against the previous director of CMS in 2006.

Collateral estoppel, also referred to as issue preclusion, is an equitable doctrine that precludes a party from relitigating an issue decided in a prior proceeding. *Illinois Health Maintenance Organization Guaranty Ass'n v. Department of Insurance*, 372 Ill. App. 3d 24, 34 (2007). The threshold requirements for application of collateral estoppel are: (1) the issue decided in the prior adjudication must be identical to the issue presented in the suit in question; (2) there must have been a final determination on the merits in the prior adjudication by a court of competent jurisdiction; and (3) the party against whom the estoppel is asserted must have been a party to or in privity with a party to the prior adjudication. *Allianz Insurance Co. v. Guidant Corp.*, 387 Ill. App. 3d 1008, 1021 (2008). A prior judgment operates as an estoppel only regarding issues actually litigated and determined and not as to other matters that might have been litigated and determined. *Hayes v. State Teacher Certification Board*, 359 Ill. App. 3d 1153, 1162 (2005). Additionally, even when the threshold requirements are met, collateral estoppel should not be applied unless it is clear that no unfairness will result to the party sought to be estopped. *Allianz*, 387 Ill. App. 3d at 1021-22. The applicability of the doctrine of collateral estoppel is a question of law, which we review *de novo*. *Allianz*, 387 Ill. App. 3d at 1022.

SBV's first lawsuit against CMS was filed in the circuit court of Cook County on February 28, 2006.[1] In that case, SBV's "verified complaint for declaratory judgment" alleged in pertinent part that it was negotiating to sell its leasehold and CMS failed to deliver its written consent to the sale and failed to execute the landlord estoppel certificate as required by the terms of the lease. The complaint also

---

[1]The case was entitled State Building Venture v. Campbell, No. 06 CH 04041.

sought a declaration of the rights of the parties pursuant to the lease and the enabling statute. Subsequently, CMS filed a motion to dismiss pursuant to section 2—619 of the Code, which the circuit court granted on August 16, 2006, dismissing the cause of action with prejudice. The court found that because the purported sale of the leasehold had fallen through or was no longer pending, there was no actual case or controversy for the court to decide and the issue regarding CMS's written consent to the sale and delivery of the landlord estoppel certificate was moot. The court further noted that the issue regarding the parties' rights pursuant to the lease and the enabling statute would be an advisory opinion because the next renewal was to occur on September 20, 2009, and therefore did not rule on that issue.

Here, we find that the issue decided in the 2006 case was not identical to the issue presented in the case at bar. The issue that was previously decided was the issue regarding CMS's consent to the sale of the leasehold, whereas the issue presented in the case at bar is a determination of the parties' rights pursuant to the enabling statute. Although there are several similarities between the verified complaints in both cases, the issue of the sale of the leasehold was dismissed as moot; therefore, the interpretation of the statute was never actually litigated or decided by the court. Collateral estoppel refers to the actual issue decided in the prior litigation, not issues or matters that might have been litigated and determined. Because the interpretation of the statute was never litigated in the prior case, it is not now barred by collateral estoppel. Therefore, we need not address the additional two requirements of collateral estoppel.

Ripeness

■ CMS also argues that SBV's claim for declaratory judgment was barred because it was not ripe and did not present an actual case or controversy.

To maintain a declaratory judgment action, there must be an actual controversy between the parties capable of being affected by a determination of the case. *Certain Underwriters at Lloyd's, London v. Boeing Co.*, 385 Ill. App. 3d 23, 41 (2008). A declaratory judgment action allows the court to take hold of a controversy one step sooner than normal, that is, after the dispute has arisen, but before steps are taken that give rise to claims for damages or other relief. *Brandt Construction Co. v. Ludwig*, 376 Ill. App. 3d 94, 101 (2007).

Illinois courts may rule on actual controversies only. *Smart Growth Sugar Grove, LLC v. Village of Sugar Grove*, 375 Ill. App. 3d 780, 789 (2007). We may not pass judgment on mere abstract propositions of law, render advisory opinions, or give legal advice about future events.

*Smart Growth*, 375 Ill. App. 3d at 789. If the harm that a plaintiff claims is merely speculative or contingent, the claim is not ripe and a court should not decide it. *Smart Growth*, 375 Ill. App. 3d at 789.

SBV's complaint alleged in paragraph 45 that SBV had been injured as a result of CMS's change in position regarding the interpretation of the statute, such that the value of its leasehold had been diminished; its leasehold interest was no longer marketable for sale; it had lost at least one sublease deal; and its long-term mortgage financing had been jeopardized.

Here, we find that there is an actual controversy between the parties. Determining the parties' rights pursuant to the statute would not constitute an advisory opinion or legal advice about future events because the parties currently disagree as to the interpretation of the statute. The harm that SBV alleges it is suffering because of CMS's "new" interpretation of the statute, namely, the devaluation of its leasehold interest, is not speculative or contingent. This court's ruling as to the interpretation of the statute would resolve any uncertainty regarding the duration of SBV's leasehold, the future marketability of the leasehold and any mortgage financing issues. A ruling would resolve the current disagreement between the parties, regardless of any future action CMS may or may not take with regard to the lease.

CMS relies on *Smart Growth* for support. In *Smart Growth*, the Village of Sugar Grove adopted a comprehensive rezoning plan that recommended using part of the plaintiff's property for a highway interchange. The plaintiff filed a complaint against the village, alleging in pertinent part, that the village's comprehensive plan that recommended using part of the plaintiff's property for a highway interchange violated the plaintiff's rights. This court held on appeal that those counts of the complaint concerning the recommendation of the highway interchange were properly dismissed because they did not present a ripe controversy. This court found that the mere proposal to building the interchange was not actionable because determining whether the proposal violated the plaintiff's rights would require an advisory opinion or legal advice about future events. *Smart Growth*, 375 Ill. App. 3d at 789-90. The court noted the distinction between a zoning ordinance, which was a law, and a comprehensive plan, which was not a law and therefore not actionable. *Smart Growth*, 375 Ill. App. 3d at 789.

We find *Smart Growth* distinguishable. SBV's complaint sought a declaration of the parties' rights pursuant to the enabling statute, which is a law, not a recommendation, as in *Smart Growth*. Therefore, we find that SBV's claim for declaratory relief is ripe and presents a controversy upon which this court may rule.

Circuit Court's Interpretation of the Enabling Statute

■ Lastly, CMS contends that the circuit court's interpretation that the enabling statute unambiguously authorized leases with automatic renewal periods was in error. CMS argues that the clause "when in the judgment of the Director those leases or subleases will be in the best interests of the State" refers to the director's judgment both at the time of entering into the lease and at the time of each renewal period.

As previously set forth, the enabling statute provides in pertinent part:

> "Portions or all of the commercial space *** may be leased *** for terms not to exceed 15 years subject to renewals when in the judgment of the Director those leases or subleases will be in the best interests of the State." 20 ILCS 405/405—315(a)(s) (West 2006).

We agree with the circuit court that the statute is unambiguous and the clause refers to the Director's judgment only at the time the lease is entered into. The words "those leases or subleases" indicate that the Director's discretion as to the State's best interests refers to the entire lease at the time CMS entered into the lease. The legislature did not state "those leases or subleases and/or any renewals." The words "those leases or subleases" are a limitation of the Director's judgment and the words "subject to renewals" are not an expansion of that discretion. Therefore, we find no error in the circuit court's interpretation of the enabling statute.

Accordingly, we affirm the judgment of the circuit court.

Affirmed.

CUNNINGHAM, J., concurs.

JUSTICE HOFFMAN, dissenting:

As the majority correctly notes in the first sentence of its opinion, "[t]he controversy in this case stems from a lease" entered into between the plaintiff, State Building Venture (SBV) and the Director of the Illinois Department of Central Management Services (CMS). 391 Ill. App. 3d at 555. Count III of the plaintiff's complaint seeks nothing more than a declaration of the plaintiff's rights under that lease, and, as such, I believe it is subject to the exclusive jurisdiction of the Court of Claims. See *Smith v. Jones*, 113 Ill. 2d 126, 132-33, 497 N.E.2d 738 (1986). It is for this reason that I respectfully dissent.

A fair reading of count III reveals that the plaintiff and CMS entered into a lease for certain commercial space in the James R.

Thompson Center having an initial term of 15 years and 9 successive 5-year optional renewal periods. The plaintiff contends that CMS has taken the position that, upon the plaintiff's exercise of each five-year renewal option, the Director of CMS has the discretion, pursuant to statute, to determine whether to extend the lease for an additional five-year period. Whereas, the plaintiff asserts that the Director has no such discretion; rather, the statutory discretion vested in the Director relating to renewal options could only be exercised at the time that the lease was initially entered into. The statute involved is section 405—315(a)(s) of the Department of Central Management Services law, which provides, in relevant part, that CMS may rent the commercial space in the James R. Thompson Center "for terms not to exceed 15 years subject to renewals when in the judgment of the Director those leases or subleases will be in the best interests of the State." 20 ILCS 405/405—315(a)(s) (West 2006).

Section 1 of the State Lawsuit Immunity Act states that, except as provided in the Court of Claims Act, the State of Illinois shall not be made a defendant in any court. 745 ILCS 5/1 (West 2006). The Court of Claims Act provides that the Court of Claims shall have exclusive jurisdiction over "[a]ll claims against the State founded upon any contract entered into with the State of Illinois." 705 ILCS 505/8(b) (West 2006). The prohibition against making the State a party to a suit founded upon a contract entered into between a plaintiff and the State cannot be evaded by making an agent of the State the defendant when the real claim is against the State. *President Lincoln Hotel Venture v. Bank One, Springfield*, 271 Ill. App. 3d 1048, 1054, 649 N.E.2d 432 (1995). However, an action filed in the circuit court against a State official in her official capacity is not subject to dismissal on jurisdictional grounds if the complaint alleges that the official is enforcing an unconstitutional law or acting in violation of law and thus acting beyond her authority. *Smith*, 113 Ill. 2d at 131-32.

The determination of whether an action is against the State depends upon the issues raised and the relief sought, not the formal identity of the parties. *Senn Park Nursing Center v. Miller*, 104 Ill. 2d 169, 186, 470 N.E.21d 1029 (1984). We look, therefore, to the complaint to determine whether the suit is one against the State or against the Director of CMS.

The majority holds that sovereign immunity does not apply to a cause of action which "seeks to enjoin the defendant from taking actions in excess of his delegated authority and in violation of the plaintiff's protectible legal interests." 391 Ill. App. 3d at 558. I agree. However, the plaintiff is not seeking to enjoin any action taken or threatened by the Director. Additionally, the plaintiff makes no allega-

tion in count III of its complaint that the Director of CMS lacked the authority to enter into the lease in the first instance. To the contrary, the plaintiff seeks a declaration that the subject lease "is binding according to its terms, including options to renew for successive terms." According to the plaintiff, it is CMS that now claims that it was not authorized to enter into the lease which allows for nine automatic renewal periods.

The majority concludes that count III is a claim for prospective relief rather than a claim for present relief and, as a consequence, is not barred by sovereign immunity. I disagree. This is a declaratory judgment action; the purpose of which according to the plaintiff is to, *inter alia*, "resolve questions of actual controversy relating to the interpretation of a statute and SBV's rights under the terms of a lease authorized by statute." The plaintiff also asserts that it "has been damaged by the State's change in position with respect to the duration of the lease and the State's recent refusal to recognize the nine automatic renewal periods in the lease." Simply put, count III of the plaintiff's complaint is a present claim for declaratory relief involving an actual controversy and asserted present damage, not a claim for prospective relief as found by the majority.

Finally, the plaintiff itself has alleged that the defendant, Maureen O'Donnell, the acting Director of CMS, "has been sued in her official capacity."

I believe that count III of the plaintiff's complaint is an action against the State for declaratory relief founded upon a contract and is, therefore, barred by the doctrine of sovereign immunity from being brought in the circuit court. The action should have been dismissed on jurisdictional grounds.