No. 03-09-0431

Filed October 20, 2010

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | |
|---|---|
| THE TOWNSHIP OF JUBILEE, an Illinois Municipal Corporation, | Appeal from the Circuit Court for the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | |
| v. | |
| THE STATE OF ILLINOIS, | No. 03-CH-445 |
| Defendant-Appellant | |
| (The County of Peoria, Trustees of Jubilee College, Unknown Owners, and Nonrecord Claimants, | |
| Defendants). | Honorable Stuart P. Borden Judge, Presiding. |

JUSTICE McDADE delivered the opinion of the court:

Plaintiff, Township of Jubilee (the Township), filed an action to quiet title against defendant, the State of Illinois (the State).[1]  The trial court denied the State's motion to dismiss on jurisdiction grounds.  Ultimately, the trial court granted the Township summary judgment,

_____

[1] Plaintiff's action also named the county of Peoria, the trustees of Jubilee College, unknown owners and nonrecord claimants as defendants.  These parties, however, are not parties to this appeal.  The State of Illinois is the only defendant involved in the present appeal.

quieting title to a 2.5-acre parcel of land – referred to in this litigation as the "public square." We affirm.

FACTS

The "public square" is located in the Township of Jubilee. The "public square," along with the land surrounding it, was purchased by Philander Chase in 1839. On the land, Philander Chase created Jubilee College. When Philander Chase died in 1852, he bequeathed his land to "the Trustees of Jubilee College."

On or about May 24, 1860, Samuel Chase, who was vice president of Jubilee College, certified a plat and survey entitled the "Plan of Jubilee." Samuel Chase acted with authority on behalf of the trustees, who were the record owners of the "public square" and the other land described in the plat and survey. Thereafter, the plat and survey were recorded in the recorder of deeds office of Peoria County, Illinois. The "public square" was included in the plat and survey.

In 1926, Jubilee College was dissolved by court order. In 1931, the chancery court of Peoria County held that the property previously owned by Philander Chase and bequeathed to the "Trustees of Jubilee College" reverted to Philander Chase's heirs when the college was dissolved. The court appointed three commissioners to "fairly and impartially" partition the land among Philander Chase's heirs or, in the alternative, have it appraised for sale. The commissioners decided to sell the land by auction.

On July 10, 1931, George Zeller bought the property for the sum of $4,000. Later that year, Zeller conveyed certain portions of the property to the Boy Scouts of America and other portions to St. Paul's Parish of the Protestant Episcopal Church of Peoria, Illinois.

In 1934, Zeller, Saint Paul's Parish and the Boy Scouts of America, all of which were

2

record owners of the former Jubilee College real estate, deeded over certain property rights to the State. None of the three deeds, however, conveyed any interest in the "public square," which is located in section 25 of the Township. Instead, all of the Jubilee College property deeded to the State was located in section 26 of the Township. No other deeds or written instruments have been recorded against the "public square" in the recorder of deeds office since the 1860 recording of the plat and survey.

In 1986, the State converted the Jubilee College real estate from a "State Historic Site" to a state park. The "public square" was not included as part of the property receiving such designation. Since that time, however, the State has maintained a sign on the "public square" describing it as a "state park or state historic site." State employees have performed maintenance on the sign for at least 22 years. The State has also mowed the lawn on the "public square."

On September 16, 2003, the Township filed a quiet title action against the State, the County of Peoria, the trustees of Jubilee College, unknown owners and nonrecord claimants. On November 13, 2003, the Township filed a motion for default judgment against the trustees of Jubilee College, unknown owners and nonrecord claimants, who had failed to answer. The trial court granted the Township's motion for default judgment on November 25, 2003. The County of Peoria filed a statement conceding that it had no evidence that the county was the owner of the "public square." Thus, the only remaining defendant at this point of the proceedings was the State of Illinois.

On January 30, 2004, the State filed a motion to dismiss on the basis that the State Lawsuit Immunity Act (Immunity Act) (745 ILCS 5/1 West 2002)) and the Court of Claims Act (Claims Act) (705 ILCS 505/8 (West 2002)) required that the Township's quiet title action be

3

brought in the Court of Claims and not the trial court. On March 16, 2004, the trial court denied the State's motion to dismiss.

The State did seek leave to pursue an interlocutory appeal. Instead, the State filed a counterclaim in the trial court alleging that it was the owner in fee simple of the "public square." Specifically, the counterclaim alleges:

"3. The claim of the [Township] is invalid in that the [Township] does not hold legal title to the premises and its claim constitutes a cloud upon title of [the State] to the real estate.

4. Presently, title to the premises has been deemed to be in the Trustees, and/or Successor Trustees, of Jubilee College.

5. [The State] claims the title as Successor Trustee to Jubilee College as identified by the Plat of 1860."

On January 25, 2009, the State filed a motion for summary judgment. The Township followed with its own motion for summary judgment on March 2, 2009, arguing that it should prevail because it had: (1) accepted the proper 1860 statutory dedication of the "public square," (2) obtained title via adverse possession for over 150 years, or (3) obtained property rights through a common dedication of the "public square."

On April 28, 2009, the trial court granted the Township's motion for summary judgment and quieted title to the "public square" in the Township's favor. The court found there had been a proper statutory dedication of the "public square" to the Township in 1860. Simultaneously, the trial court denied the State's motion for summary judgment. The State subsequently filed a motion for reconsideration. On October 6, 2009, the trial court denied the State's motion for

4

reconsideration and this appeal followed.

## ANALYSIS

We are met at the outset with a jurisdictional question. The State contends that the trial court lacked jurisdiction to hear the Township's action to quiet title. In its initial brief, the State presents the following argument:

"This case indisputably falls within the express language of the Immunity Act and the Court of Claims Act. It is a suit naming the State as a defendant arising under Illinois law. The statutes require that the claim be brought in the Court of Claims, and, as a corollary, dismissed from the circuit court."[2]

The Township responds -- in apparent partial concession -- that while the Immunity Act protects the State from being named as a defendant, the State's filing of its counterclaim and motion for summary judgment, after its jurisdictional motion to dismiss was denied, was

_____

[2] The Illinois Constitution of 1970 abolished the doctrine of sovereign immunity "[e]xcept as the General Assembly may provide by law." Ill. Const. 1970, art. XIII, §4. The State Lawsuit Immunity Act provides that "the State of Illinois shall not be named a defendant or party in any court," except as provided in the Court of Claims Act. 745 ILCS 5/1 (West 2002). The Court of Claims Act creates the Court of Claims as the "exclusive" forum for resolving lawsuits against the state. 705 ILCS 505/8 (West 2002). "The purpose of sovereign immunity is to protect the state from interference with the performance of governmental functions and to preserve and to protect state funds." *People ex rel. Manning v. Nickerson*, 184 Ill. 2d 245, 248, 702 N.E.2d 1278, 1280 (1998).

5

offensive in nature and called upon the court to make a determination of the parties' claimed ownership interests. Thus, the Township contends that the State's counterclaim actually converted the case to a "claim brought *by* the State, which sovereign immunity should not bar." (Emphasis in original.) In an effort to support this argument, the Township calls our attention to the fact that the State chose to litigate the matter on its merits as opposed to directly appealing the denial of its jurisdictional motion to dismiss.

Initially, we note that neither party has cited a case that directly addresses the question of whether the State's filing of a counterclaim, after its jurisdictional motion to dismiss was denied, acts to bar the application of sovereign immunity. In fact, the State concedes (and the Township agrees) that no "Illinois case presents the circumstances presented here – a motion by the [S]tate to dismiss based on immunity, followed by a State counterclaim against the plaintiff." While we accept the parties' concession, we will review the cited cases in the interest of clarity. We begin with *PHL, Inc. v. Pullman Bank & Trust Co.*, 216 Ill. 2d 250, 836 N.E.2d 351 (2005).

The plaintiffs in *Pullman* sought to purchase certain venture loans from the State in connection with the State's financing of several hotel projects. While the parties entered into several buy-sell agreements, the State Treasurer declined to close on the agreements after the Illinois Attorney General withheld approval of them due to his opinion that the Governor's consent was required in order for the agreements to be deemed valid. Plaintiffs subsequently filed an action against the Treasurer and the bank. Both of these defendants moved to dismiss, alleging that plaintiffs' cause of action was barred by sovereign immunity. The plaintiffs, however, argued that an exception to sovereign immunity applied because the Treasurer was acting outside her delegated authority. The trial court denied the defendants' motions to dismiss.

6

*Pullman*, 216 Ill. 2d at 257, 836 N.E.2d at 355.

Thereafter, the Treasurer filed a motion for summary judgment. The plaintiffs responded with a cross-motion for summary judgment that the trial court granted. The appellate court affirmed, finding that the "officer suit" exception to sovereign immunity applied because the Treasurer acted in excess of her authority. *Pullman*, 216 Ill. 2d at 259, 836 N.E.2d at 356. The supreme court, however, reversed, finding that the Treasurer had not acted outside her delegated authority. *Pullman*, 216 Ill. 2d at 268-69, 836 N.E.2d at 361. Thus, the supreme court found that sovereign immunity applied and the trial court lacked jurisdiction to hear the plaintiff's complaint. *Pullman*, 216 Ill. 2d at 268-69, 836 N.E.2d at 361. Instead, the Claims Act was controlling. *Pullman*, 216 Ill. 2d at 269, 836 N.E.2d at 361.

The supreme court in *Pullman* did not expressly discuss whether the Treasurer's filing of her summary judgment motion, after her jurisdictional motion to dismiss was denied, acted to bar the application of sovereign immunity. Rather the court considered only whether the "officer suit" exception applied, ultimately concluding that it did not and that the circuit court lacked jurisdiction because of the State's immunity.

The specific issue considered in *Pullman* is not before us; nor was the issue we consider pertinent in *Pullman*. The *Pullman* plaintiffs did not challenge the existence or usual effect of sovereign immunity, but only claimed the "officer suit" exception acted to negate its operation in that case. Once the exception was found inapplicable, the bar of sovereign immunity was unchallenged and automatic. Because no objection to sovereign immunity remained, the supreme court had no occasion to consider whether any filing by the Treasurer impacted its immunity holding in any way.

7

The State calls our attention to the holding in *Skelton v. Henry*, 390 F.3d 614 (8th Cir. 2004). Initially, we note that Illinois courts are generally not bound by federal court decisions. *Ray Schools-Chicago-Inc. v. Cummins*, 12 Ill. 2d 376, 381, 146 N.E.2d 42, 45 (1957). More importantly, however, we find *Skelton* factually distinguishable. The plaintiffs in *Skelton* sued the State of Missouri seeking refunds of certain monies paid to the state. The state filed an answer in which it claimed to be immune from suit in federal court pursuant to the eleventh amendment. The state also simultaneously filed a counterclaim against the plaintiffs. The instant case does not present us with a simultaneously filed counterclaim. Thus, we hold *Skelton* has no bearing on the specific jurisdictional question before us.

The Township calls our attention to the holding in *People ex rel. Manning v. Nickerson*, 184 Ill. 2d 245, 702 N.E.2d 1278 (1998). The sole issue in *Manning* was stated as follows:

> "When the State of Illinois sues a defendant in the circuit
> court, may the defendant assert a counterclaim in the circuit court
> against the state seeking damages for common law claims
> otherwise barred by sovereign immunity, *or* must the defendant file
> a separate action against the state in the Court of Claims?"
> (Emphasis in original.) *Manning*, 184 Ill. 2d at 247, 702 N.E.2d at
> 1279.

In finding that the defendant may assert a counterclaim in the trial court where the State has already sued the defendant, the court stated:

> "The defendant has raised two additional claims in his
> counterclaim: he has sought a judicial determination of the

8

boundary line between his property and the state park and ejectment. Does sovereign immunity require that these property claims also be brought in the Court of Claims? The central issue in the case is who owns the land in question, and that issue is before the circuit court by virtue of the state's complaint. The defendant's response is that he owns the land-not the state. Thus, the property claims raised by the defendant are defensive in nature and are asserted for the purpose of defeating the state's action, and not for the purpose of obtaining an affirmative judgment against the state. Because the circuit court has jurisdiction to decide the state's request for an injunction and money damages, and that necessarily involves a determination of the defendant's claimed ownership interest, sovereign immunity does not bar the circuit court from exercising jurisdiction over the defensive, property claims raised in the counterclaim." *Manning*, 184 Ill. 2d at 249-50, 702 N.E.2d at 1280-81.

In *Manning*, unlike in the situation before us, the State initially invoked the jurisdiction of the trial court by suing the defendant. Thus, *Manning* is distinguishable. To summarize, the entire appeal in the instant case revolves around the question of who owns the "public square." Initially, the Township improperly filed an action in the circuit court to quiet title asserting that it was the rightful owner of the "public square." The State then filed a motion to dismiss on jurisdictional grounds which the trial court denied. However, instead of seeking leave to pursue

9

an interlocutory appeal or simply defending against the Township's quiet title action, the State decided to file its own countercomplaint in the trial court alleging that it, not the Township, was the owner in fee simple of the "public square." The State then followed this filing with a motion for summary judgment. While the Immunity Act protects the State from being named as a defendant, the State's filing of its counterclaim and subsequent motion for summary judgment was offensive in nature and called upon the court to make a determination of the parties' claimed ownership interests. Thus, we find that even if we were to conclude that the trial court initially lacked jurisdiction to hear the Township's quiet title action, the State's subsequent counterclaim constituted an offensive action which vested the trial court with jurisdiction to determine the parties' property rights as to the "public square."

We now turn to the merits of the State's appeal. The State contends that the trial court erred in finding that there had been a proper statutory dedication of the "public square" to the Township in 1860. Initially, the State asserts that there was no statutory dedication here because the 1860 plat does not clearly indicate the trustees' intent to donate the" public square" for public use. Specifically, the State calls our attention to the fact that the plat expressly "set[s] apart and dedicate[s] the streets alleys on said plat *** for public use forever" and does not specifically dedicate the "public square" for such use. Alternatively, the State contends that if a dedication did in fact take place, the Township was not the intended recipient, and the Township did not accept the dedication.

The "public square" was platted on or about May 24, 1860, and the plat was filed for record two days later. "The sufficiency of the plat must be determined from the statute of 1845, which was then in force." *Lambach v. Town of Mason*, 386 Ill. 41, 47, 53 N.E.2d 601, 604

10

(1944). The applicable sections of the statute in force at that time require that five conditions be met in order for the plat to be deemed a valid statutory dedication: (1) use of a county surveyor, (2) setting forth of public grounds, (3) planting of sufficient stones at each corner of the public ground, (4) certification by the surveyor and proprietor, and (5) acknowledgment by a justice of the county where the public ground is located. Rev. Stat. 1845, §§19, 20). A plat that does not strictly comply with each condition is not a statutory plat. *Lambach*, 386 Ill. at 47, 53 N.E.2d at 604.

Upon review, we find that the designation of the "public square" complied with all five of the above statutory requirements. First, D.B. Allen Department County Surveyor P. Company, the surveyor of Peoria county at the time, performed a survey of the "Town of Jubilee" laid out by Samuel Chase.

Second, while the State argues that the plat fails to adequately express an intent to donate the "public square" for public use, we place great significance upon the fact that the trustees used the word "public" to describe the property in question. The plat expressly states: "PUBLIC SQUARE." We find the word "public" particularizes the subject which it precedes, that being the "square." Moreover, we note that the supreme court has previously held that a properly surveyed, recorded and acknowledged plat, which included a parcel of property designated as a "public square," was sufficient to effect a public dedication. See *Melin v. Community Consolidated School District No. 76*, 312 Ill. 376, 380-81, 144 N.E. 13, 15 (1924). Specifically, the *Melin* court held that "[t]he words on the plat indicate the intention of the dedicators." *Melin*, 312 Ill. at 380, 144 N.E. at 15.

While the State alternatively contends that the Township was not the intended recipient of

11

the "public square," we note that the plat is labeled the "Plan of Jubilee" and Samuel Chase's certification describes the "Town Plat and Survey of Jubilee." In light of these particular circumstances, we find that the Township was the trustees' intended recipient of the "public square." The fact that the plat uses the word "town" as opposed to "township" appears to be of no consequence. Documents and meeting minutes submitted in support of the Township's motion for summary judgment showed that the terms "township" and "town" were used interchangeably. For example, on or about April 2, 1850, at the first organizational meeting of the Township, the first line of the meeting references the "Town of Jubilee." All subsequent annual township meetings are referred to as "annual town meetings," with many individual meeting minutes identified as taking place in the "Town of Jubilee."

Third, the requisite stones were placed at the corners of the "public square." The plat clearly shows "granite" and "sandstone" at the four corners of the "public square." Moreover, the county surveyor's certification states: "A Stone is planted at each corner of the public square from which to make future surveys."

Fourth, the plat containing the "public square" is certified by Samuel Chase, the representative of the then-owners of the land, the trustees.

Finally, a justice of the peace in Peoria County, Matthew Craig, certified and acknowledged that Samuel Chase appeared before him as the person who certified the "Town Plat & Survey of Jubilee" as agent for the trustees. The plat was then filed for record May 26, 1860.

Because we find that the designation of the "public square" complied with all five of the above statutory requirements, we conclude that there was a statutory dedication of the "public

12

square." However, our inquiry does not end there. Instead, we must determine whether the Township accepted the statutory dedication. "Until acceptance the fee remains with the original proprietors or their successors in interest." *Schwebl v. Seifer*, 208 Ill. App. 3d 176, 181, 567 N.E.2d 37, 41 (1991). Acceptance of a statutory dedication may be express or implied. *La Salle National Bank v. City of Chicago*, 19 Ill. App. 3d 883, 886, 312 N.E.2d 322, 323 (1974). In the instant case, the Township does not assert that any express acceptance was made but only that there was an implied acceptance. We agree.

On September 27, 1860, approximately four months after the statutory dedication, 12 Township voters – including Samuel Chase himself – petitioned the Township for permission to lay out a new road across the "public square." The Township granted permission to vacate a portion of the existing road at the southwest corner of the "public square" and establish a new roadway. While the State, in its reply brief, alleges that the new roadway "went around the public square" and therefore does not evidence that the Township accepted a dedication of the square, we note that the State's own initial brief rebuts this claim. Specifically, the State in its initial brief acknowledges that the "public square" is "comprised of two parcels of land bifurcated by a public roadway." The record confirms this fact that the new roadway goes through the "public square." More importantly, however, the Township's act of granting permission to change the path of the roadway evidences its assumption of ownership and control over the "public square." Acceptance may be shown by any act with respect to the property claimed to be dedicated that clearly indicates an assumption of jurisdiction and dominion over it by the public authorities. *H. A. Hillmer Co. v. Behr*, 264 Ill. 568, 576, 106 N.E. 481, 484 (1914). Thus, we find that the "public square" had been accepted by the Township and fee simple vested

13

in the public. See *Reiman v. Kale*, 83 Ill. App. 3d 773, 776, 403 N.E.2d 1275, 1277 (1980).

Next, the State contends that the Township "abandoned the dedication by attempting to sell the public square." Specifically, the State contends that the "motive" behind the Township's present quiet title action is to clear title to the "public square" so that it can later sell the property. While we acknowledge that a statutory dedication of land for public purposes must be preserved for public purposes (*Harris Bank of St. Charles v. City of Geneva*, 278 Ill. App. 3d 738, 742, 663 N.E.2d 483, 488 (1996), we note that the State's assertion is purely speculative. The State fails to present us with any facts that establish that the Township is actually attempting to sell the "public square." Instead, it only contends that the Township is planning or moving toward attempting to sell the "public square." Illinois courts may rule on actual controversies only. *State Building Venture v. O'Donnell*, 391 Ill. App. 3d 554, 560, 909 N.E.2d 894, 900 (2009). "If the harm that a plaintiff claims is merely speculative or contingent, the claim is not ripe and a court should not decide it." *O'Donnell*, 391 Ill. App. 3d at 561, 909 N.E.2d at 900. Consequently, we decline to address this specific argument raised by the State, finding it premature.

Lastly, the State claims that it "took title to the land through adverse possession." Specifically, the State contends that it possessed the "public square" by "mowing the lawn, performing maintenance on the sign located on the public square, and by granting permission to others to use the land to plant and maintain a natural prairie site." We disagree.

"Property is not taken by adverse possession unless the following elements exist concurrently for the statutory period of 20 years: (1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious, and exclusive possession of the premises, (5) under a claim of title

14

inconsistent with that of the true owner." *Knauf v. Ryan*, 338 Ill. App. 3d 265, 269, 788 N.E.2d 805, 808 (2003). All presumptions are in favor of the title owner, and the party claiming title by adverse possession must prove each element by clear and unequivocal evidence. *Knauf*, 338 Ill. App. 3d at 269, 788 N.E.2d at 808.

We begin by noting that the mere mowing of grass alone is generally insufficient to support a finding of adverse possession. See *Nitterauer v. Pulley*, 401 Ill. 494, 503, 82 N.E.2d 643, 648 (1948). Moreover, we recognize that the State erected and maintained a sign on the "public square", however, the State fails to acknowledge that it first sought and received permission from the Township to erect the sign. At that same meeting, the Township resolved that it would take responsibility for the further cleanup of the "public square." Consequently, this fact actually weighs against any claim of adverse possession. Finally, we do not believe that the mere allowance of others to use the "public square" to plant and maintain a natural prairie site establishes the exclusive, hostile, actual, open, and notorious possession required to support a finding of adverse possession. Thus, we find that the State has failed to carry its burden of presenting "clear and unequivocal" evidence establishing adverse possession.

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

WRIGHT and LYTTON, JJ., concur.

15