# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *Township of Jubilee v. State of Illinois*, 2011 IL 111447

---

| | |
|---|---|
| Caption in Supreme Court: | THE TOWNSHIP OF JUBILEE, Appellee, v. THE STATE OF ILLINOIS *et al.* (The State of Illinois, Appellant). |
| Docket No. | 111447 |
| Filed | December 15, 2011 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The State's immunity from suit in circuit court did not apply in a township's quiet title action against it after the State responded with its own quiet title action; and there was no lack of jurisdiction for a summary judgment subsequently entered against it. |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Peoria County, the Hon. Stuart P. Borden, Judge, presiding |
| Judgment | Affirmed. |

Counsel on Appeal  Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, and Paul Berks, Assistant Attorney General, of Chicago, of counsel), for appellant.

Daniel M. Cordis, of Cordis & Cordis, of Princeville, for appellee.

Justices  JUSTICE KARMEIER delivered the judgment of the court, with opinion.
Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1  The issue in this case is whether the circuit court had jurisdiction to enter summary judgment in favor of the Township of Jubilee and against the State of Illinois (State) in an action to quiet title. For the reasons that follow, we hold that it did. We therefore affirm the judgment of the appellate court (405 Ill. App. 3d 489), which affirmed the circuit court of Peoria County's judgment.

¶ 2           BACKGROUND

¶ 3  The litigation before us is the result of a dispute over ownership of two parcels of property located in the Township of Jubilee. For purposes of this opinion, the two parcels shall be referred to collectively as the "public square." So far as we can tell, the property has never served as an actual public square. The name is derived from a survey and plat described later in this opinion.

¶ 4  The "public square" was originally part of a larger land acquisition made by Philander Chase in 1839.[1] Chase bought the ground in order to establish a college there. The institution, Jubilee College, was incorporated under the laws of Illinois several years after it was founded. When Chase died in 1852, he bequeathed the land to the college's trustees.

¶ 5  In May of 1860, the Reverend Samuel Chase, Philander Chase's cousin and vice president of Jubilee College, certified a plat and survey labeled the "Plan of Jubilee" and referred to as the "Town Plat of Jubilee." Rev. Chase was authorized to do so on behalf of the college's trustees, who were the record owners of the property. The plat and survey, which included the subject property and identified it as "the public square," were duly recorded in the recorder of deeds office of Peoria County. The portion of the plat and survey containing the "public square" complied with the legal requirements then in effect for a

---

[1]Philander Chase was the first Episcopal Bishop of Illinois. He is perhaps best known as the founder of Kenyon College.

statutory dedication. The dedication of the "public square" was impliedly accepted by the Township and fee simple vested in the public.

¶ 6 The college closed not long after the plat and survey were recorded. Eventually, in 1926, an action was brought by the State for dissolution of the Jubilee College corporation. That action was successful. The corporation was formally dissolved, and the college's charter was declared null and void.

¶ 7 Approximately five years following the college's dissolution, the chancery court of Peoria County held that as a result of the dissolution, ownership of the property previously owned by Philander Chase and bequeathed to the "Trustees of Jubilee College" should revert to Philander Chase's heirs. The court appointed three commissioners to "fairly and impartially" partition the land among those heirs or, in the alternative, to have it appraised for sale.

¶ 8 Various tracts of the former Jubilee College property were sold at auction in 1931. An individual named George Zeller was the high bidder. After obtaining title to the property, Zeller conveyed certain portions of it to the Boy Scouts of America and other portions to Saint Paul's Parish of the Protestant Episcopal Church of Peoria. The property was, in turn, deeded to the State. From the record before us, it appears that neither the 1931 sale nor the subsequent conveyances included or purported to include the "public square."

¶ 9 The portion of the former Jubilee College property deeded to the State became a state historic site. In 1986, the State converted the property to a state park. Although the "public square" was not included in the property deeded to the State, the record indicates that the State erected a sign on a portion of the "public square" describing it as a "state park or state historic site." State employees performed maintenance on that sign for more than two decades and mowed the lawn on the "public square." In addition, the State allowed other individuals to plant and care for a prairie area on the premises.

¶ 10 The "public square" originally covered an area measuring 2.52 acres. A county road now cuts through the land, dividing it into two smaller parcels. The larger of the two parcels covers 1.6 acres and has been given the parcel identification number 07-25-302-001. The smaller parcel, whose parcel identification number is 07-25-303-001, is approximately 0.127 acres in size.

¶ 11 In 1997, the trustees of the Township of Jubilee approved a resolution authorizing the Township's attorney to bring an action to quiet title to the "public square" and to take such further action as might be necessary to sell the property. Eventually, in September of 2003, such an action was filed. Styled a "complaint for declaratory judgment and to quiet title," the Township's pleading named as defendants the State of Illinois, the County of Peoria, the trustees of Jubilee College, unknown owners and nonrecord claimants.

¶ 12 When no response was filed by or on behalf of the trustees of Jubilee College, the unknown owners or the nonrecord claimants, the Township successfully moved for entry of a default judgment as to those parties. The State then moved to dismiss the Township's complaint against it pursuant to section 2-619(a)(1) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(1) (West 2002)). As grounds for its motion, the State argued that under the State Lawsuit Immunity Act (Immunity Act) (745 ILCS 5/0.01 *et seq.* (West 2002)) and the

Court of Claims Act (Claims Act) (705 ILCS 505/1 *et seq.* (West 2002)) the circuit court had no jurisdiction to consider the Township's action for declaratory judgment and to quiet title as it pertained to the State. In the State's view, exclusive jurisdiction to consider the Township's property claims with respect to the State lay in the Court of Claims.

¶ 13 By order dated March 16, 2004, the circuit court denied the State's motion to dismiss and granted the State additional time to file its answer. Instead of submitting an answer, however, the State filed a document it labeled "counter-complaint," but later sometimes referred to simply as a "complaint." That pleading did not respond to the allegations of the Township's complaint. Rather, it was structured as a separate action to quiet title. It averred that the Township did not hold title to the land known as the "public square," that the State was "the owner in fee simple" of the subject property, that the State claimed title as "Successor Trustee to Jubilee College as identified by the Plat of 1860," and that the Township's claim should be deemed a cloud on the State's title.

¶ 14 Time passed. No further action was taken in the case for more than three years. Eventually, in January of 2008, the State did answer the Township's complaint. Then more time passed. In October of 2009, the State filed a motion for summary judgment. After noting that both the Township and the State "had filed Complaints for Quiet Title as to the portion of the area known as the Public Square of the Town of Jubilee," the State argued that it "should be granted its Complaint for Quiet Title" on the following grounds: (1) that the Township has no legal authority to hold title to property dedicated for the purpose of creating another town, (2) the Township's "acceptance of the dedication appears to be an attempt to claim property it was never entitled to possess and should be considered a claim by color of title," and (3) the Township "is a subagency of the State and cannot have a superior title to land dedicated to the public." In the alternative, the State argued that it had "continuously, adversely possessed and maintained the property for over twenty years to the exclusion of the Township and the Township's action is barred by the doctrine of laches."

¶ 15 Shortly after the State moved for summary judgment on its quiet title action, the Township moved for summary judgment in its favor on its action for declaratory judgment and to quiet title and for summary judgment against the State on the State's quiet title action. In support of its motion, the Township argued that under the law in effect in 1860, the plat certified by Rev. Chase and filed with the recorder of deeds operated as a statutory dedication of the "public square" property which transferred title in fee simple to the Township. Though the plat referred to the Town of Jubilee rather than the Township of Jubilee, the Township argued that at the time the plat was created, the terms "town" and "township" were commonly used interchangeably and that the grantor's intent was to dedicate the "public square" to the Township. The Township further asserted that it had accepted the dedication "by implication from its acts of assuming control over and exercising jurisdiction over the PUBLIC SQUARE and held itself out as the owner of such real estate for approximately 150 years."

¶ 16 The Township countered the State's claim of adverse possession by submitting evidence that in August of 1978, before the State had erected its sign on the "public square," a park ranger had appeared before the Township trustees, on behalf of the State, to ask permission to put up the sign and that, by a vote of the trustees, permission had been granted. The

Township further noted that within 20 years after granting permission to the State, the Township trustees had given authority for action to be taken to obtain a quitclaim deed to the property.

¶ 17 In response to the Township's separate motion for summary judgment, and in further support of its own motion for summary judgment, the State disputed the Township's claim that the property had been properly dedicated to the Township, it challenged the competence and significance of the evidence purporting to show that the Township had granted permission to the State to use the property, and it reiterated its claim that it had acquired the property through adverse possession. At no time did the State suggest, directly or indirectly, that the circuit court lacked jurisdiction to grant the relief it requested.

¶ 18 The day after the State filed its response, the Township filed a response of its own. That response asserted various legal and factual challenges to the State's contentions. Shortly thereafter, the circuit court entered an order granting summary judgment in favor of the Township and against the State and quieting title to the two parcels comprising the "public square" in the Township, "free of the claims of all Defendants."

¶ 19 The State appealed. It asserted that the judgment against it could not stand because the circuit court lacked jurisdiction over it. The State further argued, in the alternative, that the circuit court's judgment was wrong on the merits and should be reversed. The appellate court rejected both arguments and affirmed the judgment of the circuit court. 405 Ill. App. 3d 489. The matter is now before us after we allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Feb. 26, 2010).

¶ 20                                    ANALYSIS

¶ 21 In our court, the State does not contend that the lower courts' judgments are incorrect on the merits. Its argument is simply that, under the doctrine of sovereign immunity, the circuit court lacked jurisdiction to enter summary judgment against it with respect to the property dispute between it and the Township. In the State's view, nothing it did in the course of the trial court proceedings constituted a waiver of its sovereign immunity and, as a result, the only permissible forum for litigating the property dispute with the Township is the Court of Claims.

¶ 22 The doctrine of sovereign immunity "protects the State from interference in its performance of the functions of government and preserves its control over State coffers." (Internal quotation marks omitted.) *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 159 (2010). The Illinois Constitution of 1970 abolished sovereign immunity "[e]xcept as the General Assembly may provide by law." Ill. Const. 1970, art. XIII, § 4. Pursuant to this constitutional authorization, the General Assembly subsequently reestablished sovereign immunity by enacting the State Lawsuit Immunity Act, which provides that "the State of Illinois shall not be named a defendant or party in any court," except as provided in the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 2008)) and in several other statutes not pertinent here. 745 ILCS 5/1 (West 2008). The Court of Claims Act, in turn, established the Court of Claims as the exclusive forum for litigants to pursue claims against the State. 705 ILCS 505/8 (West 2008).

¶ 23    Whether the circuit and appellate courts ruled correctly in the case before us turns on the construction of these statutes and presents a question of law, which we review *de novo*. *State Building Venture v. O'Donnell*, 239 Ill. 2d at 160. *De novo* review is also appropriate because the ruling by the circuit court which gave rise to this appeal involved the grant of summary judgment. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 309 (2010).

¶ 24    In *Sass v. Kramer*, 72 Ill. 485 (1978), our court considered the statutory and constitutional provisions just described in the specific context of a quiet title action involving the State. Although the quiet title action in *Sass* was nominally directed against the Secretary of the Department of Transportation, it did not involve a situation where a State officer had acted illegally or under authority he or she did not possess. In the court's view, the litigation "clearly affect[ed] property of the State" and the real party in interest was the State, not the individual State official named as the defendant. *Id.* at 492. Because the action was, in fact, an action against the State itself, we reasoned that under the foregoing statutory and constitutional provisions, it could not be maintained "in any court except as provided in the Court of Claims Act" and that nothing in the Court of Claims Act permitted the action to be brought "in any of the courts provided for under article VI of the Constitution of 1970" (Ill. Const. 1970, art. VI). *Id.* at 492-93. We therefore reversed the judgment of the circuit court, which had exercised jurisdiction over the case and entered judgment quieting title in the plaintiff, extinguished any rights of the State to the disputed property, and issued a writ of possession in favor of the plaintiff. *Id.* at 488, 493.

¶ 25    *Sass v. Kramer*'s holding that a circuit court lacks jurisdiction to hear quiet title actions brought against the State has not been questioned by the parties to this proceeding. We note, moreover, that where a litigant attempts to initiate an action against the State in circuit court, efforts by legal counsel for the State to defend itself against that action will not result in a waiver or forfeiture of the State's statutory immunity. That is so because only the legislature itself can determine where and when claims against the State will be allowed. *People ex rel. Manning v. Nickerson*, 184 Ill. 2d 245, 249 (1998). As a result, when the State is named a defendant or party in a proceeding in contravention of the State Lawsuit Immunity Act (745 ILCS 5/1 (West 2008)), counsel for the State may elect to answer the complaint, engage in discovery, and undertake whatever other defensive measures are permitted by the rules and statutes governing civil practice without jeopardizing the State's claim of sovereign immunity. See *Watson v. St. Annes Hospital*, 68 Ill. App. 3d 1048, 1051 (1979). Such defensive measures are a valid means for protecting the State's interests until the issue of sovereign immunity is finally resolved, and they insure that any other defenses the State may have are preserved in the event its claim of sovereign immunity is ultimately rejected.

¶ 26    In light of the foregoing principles, the Township's request to quiet title to the disputed realty with respect to any claim of ownership by the State of Illinois should not have been initiated in the circuit court. Proceeding in the circuit court was entirely appropriate with respect to the County of Peoria and all of the other defendants. No one disputes that the Court of Claims lacked jurisdiction as to them. With respect to the claims against the State, however, the Court of Claims provided the only potential forum under Illinois law.

¶ 27    Had the State merely moved to dismiss the Township's action, answered its complaint,

or otherwise engaged in the kind of responsive litigation measures defendants undertake to defeat claims against them, resolution of this case would be straightforward. Any judgment entered by the circuit court against the State on the Township's claims would be fatally infirm for lack of jurisdiction and could not stand. As the appellate court in this case correctly recognized, however, the State did not merely defend against the Township's cause of action. See 405 Ill. App. 3d at 495. Rather, it filed its own complaint to quiet title, alleging that the Township did not hold title to the land known as the "public square," that the State was "the owner in fee simple" of the subject property, that the State claimed title as "Successor Trustee to Jubilee College as identified by the Plat of 1860," and that the Township's claim should be deemed a cloud on the State's title. Such a claim was something the State had the right to file and the court had jurisdiction to consider.

¶ 28       By its terms, the State Lawsuit Immunity Act (745 ILCS 5/1 (West 2008)) only prevents the State from being named a defendant or party in court proceedings. It does not limit the authority of the State to seek redress in the circuit court by filing a complaint of its own. Indeed, when the State wishes to obtain redress with respect to a property dispute such as the one before us, the courts are the only forum available to it. The State cannot press its claim in the Court of Claims because, except in cases where the State is seeking recoupment from a claimant under the Court of Claims Act (see 705 ILCS 505/8(e) (West 2008)), a circumstance not relevant here, that body is authorized by law only to consider claims *against* the State.

¶ 29       The State argues that the circuit court's judgment against it cannot be sustained unless we agree that it waived its sovereign immunity, a conclusion which, it argues, would be incompatible with the principle that sovereign immunity may not be waived except by the legislature. What this argument fails to appreciate is that the reason the State was subject to the jurisdiction of the circuit court was not because it waived its immunity. It was because the State elected to affirmatively invoke the circuit court's jurisdiction in aid of its claim. As we have just indicated, that is something it had every right to do and was, in fact, required to do if it wished to prosecute its own action to quiet title. The various decisions cited by the State regarding waiver of sovereign immunity are therefore of no relevance.

¶ 30       The State further argues that filing its own complaint was necessary as a defensive measure because, if it had not done so, its right to assert ownership of the public square would have been precluded by the doctrine of *res judicata*. This is incorrect under the law. Filing the complaint did not serve to guard the State against future *res judicata* problems. To the contrary, it was only by filing its own complaint that the State triggered application of the doctrine. Had the State simply defended against the cause of action asserted by the Township, the jurisdictional impediment to the Township's action would have rendered any judgment entered by the circuit court void and unenforceable. A judgment which is null and void for lack of jurisdiction may not be used as the basis for application of the doctrine of *res judicata*. *People v. Kidd*, 398 Ill. 405, 410 (1947).

¶ 31       We therefore agree with the appellate court that the circuit court had jurisdiction to consider the State's claim and determine the parties' property rights with respect to the "public square." That the State elected to file its request to quiet title in the same proceeding as the one initiated by the Township rather than by filing a separate action does not alter that

conclusion. While the Township's complaint should have been dismissed as to the State earlier in the proceeding, such a dismissal would not have terminated the litigation. The default judgment entered by the court shortly before the State filed its motion to dismiss pertained only to the trustees of Jubilee College and the unknown owners and nonrecord claimants. It did not affect the claims with respect to the County of Peoria. At the time the State filed its own complaint to quiet title to the subject property, the litigation therefore remained pending.

¶ 32    Had the State filed its quiet title action separately, that action could have been consolidated with the Township's still pending litigation. See 735 ILCS 5/2-1006 (West 2008). Alternatively, the State could have pressed its claim here by formally moving to intervene in the Township's action pursuant to section 2-408 of the Code of Civil Procedure (735 ILCS 5/2-408 (West 2008)). Once either of those things occurred, the Township could then have asserted its competing claims to the property against the State without the need to resort to the Court of Claims. See *People ex rel. Manning v. Nickerson,* 184 Ill. 2d 245, 249-50 (1998). Under either scenario, the litigation would therefore be left in the same posture it was in when the circuit court rendered its judgment here. Under either scenario, there would be no question as to the circuit court's jurisdiction to enter that judgment.

¶ 33    Under these circumstances, the only way the State can prevail on this appeal is if there is something about the particular procedural mechanism invoked by the State to press its claim here which should yield a different result. Is it dispositive, in other words, that the State initially styled its request for relief as a "counter-complaint," that it did not formally move for leave to intervene, or that it filed its complaint under the same docket number as the Township's cause of action rather than in a separate proceeding? We think not.

¶ 34    Formality is important in some contexts, but pleadings are to be liberally construed with a view toward doing substantial justice between the parties (735 ILCS 5/2-603(c) (West 2008)), and Illinois courts have not hesitated to characterize pleadings by their content rather than by their title. Thus, for example, in a case where a purported counterclaim against a codefendant was not filed until after the original plaintiff's underlying claim was settled and the cause of action dismissed with prejudice, our appellate court held that the circuit court should have permitted the pleading to be treated as a complaint against the former codefendant and allowed the claim to proceed because, had it been filed as a complaint under a separate docket number to begin with, it would have been proper. In the court's view, barring the action because it was wrongly captioned would not provide substantial justice between the parties. *Nelson v. Biegel*, 118 Ill. App. 3d 592, 594 (1983). The same can be said of this case as well.

¶ 35    In addition, it is axiomatic that in matters of statutory construction, we cannot allow formality to trump substance where the result would be contrary to the purposes for which the statute was enacted and lead to consequences which the legislature could not have intended. See *In re Lieberman*, 201 Ill. 2d 300, 319 (2002). The purpose of the statutory provisions establishing sovereign immunity is to protect the State from interference with the performance of governmental functions and to preserve and to protect State funds. *People ex rel. Manning v. Nickerson*, 184 Ill. 2d at 248. As described earlier in this opinion, those concerns are simply not present where, as here, the State itself elects to affirmatively invoke

the jurisdiction of the circuit court in aid of its own cause of action.

¶ 36     Finally, we must observe that if the State's motion for summary judgment had been successful and judgment had been entered in its favor on its quiet title action, the State would surely not be questioning the jurisdictional soundness of the circuit court's judgment. We are here today only because the State lost. If we accepted the State's jurisdictional argument and reversed the judgments of the lower courts, the State could return to circuit court as soon as our mandate issued and file a new quiet title action identical in every way–save the caption–to the pleading it filed here in an effort to obtain a better outcome. More than eight years of litigation would be erased by a procedural technicality whose observance would serve no purpose other than to give the State a second bite of the apple. Courts are obliged to construe statutes to avoid absurd, unreasonable, or unjust results. *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 558-59 (2009). The outcome advocated by the State would be incompatible with that obligation.

¶ 37                                   CONCLUSION

¶ 38     For the foregoing reasons, we hold that the appellate court did not err when it determined that the circuit court had jurisdiction to enter judgment in favor of the Township and against the State in this litigation. The appellate court's judgment, which affirmed the judgment of the circuit court, is therefore affirmed.

¶ 39     Affirmed.